JOHN H. BYERS and others *vs.* MAX ORENSSTEIN and another.

January 18, 1890.

**Record of Contract to Convey, when it Ceases to be Notice.**—The record of a contract to convey real estate, there being nothing of record to show that it had been enforced or performed, or the right to enforce it extended, ceases to be notice of the vendee's rights under it, or of anything done pursuant to it, when, according to the record, the statute of limitations has barred the right to enforce it; and any one seeing the record may in such case assume that the contract was abandoned by the parties interested in it.

**Deposition—Introduction by Opposite Party.**—The party putting interrogatories or cross-interrogatories for the deposition of a witness pursuant to stipulation may decline to read any of them and the answers, but, if he do, the other party may read them.

**Harmless Error.**—Error *held* to be without prejudice.

Appeal by plaintiffs from an order of the district court for Ramsey county, *Brill, J.*, presiding, (by whom the action was tried, without a jury,) refusing a new trial.

*S. & O. Kipp*, for appellants.

*Fr. F. Wilde* and *Henry B. Farwell*, for respondents.

GILFILLAN, C. J. November 5, 1856, one Dunwell, being then the owner of an undivided half of lots 10, 11, and 12, in block 13, of the town of Brooklynd, in Dakota county, executed a bond to convey the lots (not merely the undivided half) to John H. Byers, upon being paid the sum of $525, with interest, according to the conditions of two promissory notes, (when they were to become due does not appear,) and upon the vendee making improvements on the lots within one year from that date to the amount of $800. The bond was recorded January 9, 1857. Byers and wife, on February 3, 1857, executed to one Pollock a quitclaim deed of the lots, which was recorded the same day, and April 9, 1859, Pollock and wife executed to Virginia Byers, the wife of John H., a quitclaim deed of the lots, which was recorded April 23, 1859, September 3, 1860, Dunwell and wife executed to Virginia Byers a deed of lots 11 and 12, which

deed was never recorded. The improvements mentioned in the bond were never made on the lots, nor does it appear that Byers or his wife ever went into possession. May 2, 1881, Dunwell and wife executed to John B. Spencer, the owner of the other undivided half of the lots, a power of attorney, authorizing him in the fullest terms to convey real estate, which was recorded February 23, 1882. November 17, 1884, Spencer and wife on their own behalf, and Spencer on behalf of and as attorney in fact for Dunwell and wife, executed to one Fantle a warranty deed of lot 11, which was recorded the same day, and on the same day Fantle and wife executed to defendant a warranty deed of that lot, which deed was also duly recorded, and defendant immediately went into possession and built on the lot, and is now in possession. Defendant was a *bona fide* purchaser, and entitled to the protection of the registry laws, unless the record of the bond and of the quitclaim deed to Pollock, and by Pollock to Virginia Byers, were constructive notice of the unrecorded deed by Dunwell and wife to her. The action is in ejectment, to recover one undivided half of lot 11, the plaintiffs claiming as heirs of Virginia Byers. Upon these facts the court below ordered judgment for the defendant, and from an order denying their motion for a new trial the plaintiffs appeal.

The plaintiffs claim, apparently, that, the record of a contract to convey being constructive notice of the right it gives the vendee,— that is, of the right to a conveyance of the fee upon his complying with its terms,—the notice puts any subsequent purchaser upon inquiry to ascertain if such terms have been complied with, or if the conveyance has been made, and charges him with notice of any subsequent acts in performance of the contract, including a conveyance, if any has been made, which might have been ascertained through such inquiry; and that the record notice will continue to have that effect indefinitely, no matter how long afterwards a purchaser may have occasion to examine the record, to ascertain the condition of the title and determine whether he will purchase. The record of such a contract is, of course, notice to subsequent purchasers or mortgagees of the rights it gives the vendee in or to the land. And for the pur-

poses of this case it may be conceded that it has that effect, and the effect to put parties upon inquiry as to what may have been done under it, so long as, according to the record, it remains a vital, that is, an enforceable, contract. But how will it be when by lapse of time it has, so far as the record shows, ceased to exist as an enforceable contract,—when the right to enforce it has become barred? Here is a case where, when the defendant purchased, the record showed—assuming, as we must, that the notes mentioned in the bond fell due within a reasonable time, or at once—that the right to enforce the contract on either side had been long since barred by the statute of limitations, and there was nothing on the record to show that it had been enforced or been performed, or the right to enforce it extended. If the right to enforce the contract had been extended, it was by matter not appearing upon the record, not contemplated in the contract, and the record would be no notice of such matter. In such a case, the contract and the rights of the parties given by it appearing by the record to be extinct, we do not hesitate to hold that the record was no longer notice of any such rights, or of anything done under the contract. It appeared no longer to affect the title. Any one examining the record, and having no other notice, in such a case, would have the right to assume that the contract had been abandoned, or that the parties had seen fit not to insist on its performance until their right to do so was cut off by the statute of limitations.

Under a stipulation of the parties, the testimony of a witness on behalf of plaintiffs was taken on interrogatories and cross-interrogatories. Upon the trial the defendant asked leave to withdraw his second cross-interrogatory, and the answer thereto, and the court permitted him to do so, and, on plaintiffs offering to read them, held that they had no right to do so. In deciding against plaintiffs' right to read them in evidence, the court was in error. A party putting an interrogatory to a witness in such a case need not read it and the answer, if he chooses not to, but, in that event, the other may read them. *In re Smith*, 34 Minn. 436, (26 N. W. Rep. 234.) But the exclusion of them did not prejudice. They related only to whether the contract had, as between Dunwell and Byers, been, in fact, re-

leased, abandoned, cancelled, or forfeited. The rights of the parties hereto are controlled, not by what was the fact, but by the effect of the record as notice of such fact.

Order affirmed.