IRENE D. HALL, Appellant, *v.* ELMER E. SMATHERS et al., Respondents.

**Negligence — assault — trespass — tenant assaulted by superintendent of building when she went into cellar to feed cats — when not a trespasser — erroneous dismissal of complaint where it is shown that superintendent was to the knowledge of the defendant owners, vicious, dangerous and frequently intoxicated.**

A tenant in an apartment house who, together with the other tenants, had a right to use the cellar or a specified portion thereof for storeroom purposes and who for more than six months at the request of the owner's agents and employees had been going into the cellar to feed cats left there by a former tenant and to assist in their removal is not a trespasser in the cellar in going there for the purpose of feeding remaining cats. Where, while there, she was assaulted by the owner's superintendent in charge of the building and it appears, in an action against such owners, the complaint in which was broad enough to cover a cause of action either for assault or for negligence, that the

superintendent, to the knowledge of the defendants was incompetent, inefficient, vicious, dangerous and frequently intoxicated, a dismis al of the complaint was erroneous.

*Hall* v. *Smathers,* 208 App. Div. 599, modified.

(Submitted June 3, 1925; decided July 15, 1925.)

APPEAL from a judgment, entered May 28, 1924, upon an order of the Appellate Division of the Supreme Court in the first judicial department, reversing a judgment in favor of plaintiff entered upon a verdict and directing a dismissal of the complaint.

*Edward A. Scott* and *Arthur Ofner* for appellant. Plaintiff was rightfully in the basement and defendants rested under legal obligation to protect her from injury. (*Hogle* v. *Franklin Mfg. Co.,* 199 N. Y. 388; *Blaisdell* v. *L. I. R. R. Co.,* 152 App. Div. 218; *Heffron* v. *N. Y. C. & H. R. R. R. Co.,* 223 N. Y. 473; *Marino* v. *Farrell,* 201 App. Div. 367; *Quinn* v. *Staten Island R. R. Co.,* 224 N. Y. 493; *Withers* v. *Brooklyn Real Estate Exchange,* 106 App. Div. 255; *Lowell* v. *Williams,* 183 App. Div. 701; 228 N. Y. 592; *Bolton* v. *Madsen,* 205 App. Div. 180; *Quinn* v. *Power,* 87 N. Y. 535; *Bush* v. *Sinclair Rooney Co.,* 207 App. Div. 699; *Dupre* v. *Child,* 52 App. Div. 306.)

*Caruthers Ewing* for respondents. Plaintiff was not rightfully in the basement when she was injured. (*Fannigan* v. *Amer. Glucose Co.,* 11 N. Y. Supp. 688; *Cristiano* v. *Millers,* 36 N. Y. Supp. 419; *Mayer* v. *Laux,* 43 N. Y. Supp. 743; *Wholey* v. *Kane,* 16 App. Div. 166; *Walsh* v. *Frey,* 116 App. Div. 527; *McAlpin* v. *Powell,* 70 N. Y. 126; *Miller* v. *Woodhead,* 104 N. Y. 471; *Splittorf* v. *New York,* 108 N. Y. 305; *Cusick* v. *Adams,* 115 N. Y. 55; *Sterger* v. *Van Siclen,* 132 N. Y. 499; *Walsh* v. *F. R. R. R. Co.,* 145 N. Y. 301.)

CRANE, J. The defendants were the owners of premises No. 2128 Broadway in the borough of Manhattan,

city of New York, being a large apartment house with apartments of various sizes rented and leased to tenants. Mrs. Hall, the plaintiff, in September of 1920 was one of these tenants. She had together with the other tenants a right to use the cellar or a specified portion thereof for storeroom purposes. The defendants kept and maintained a superintendent named Roscoe Staats who had charge and control of the building for the defendants. It appears that he personally at times ran the passenger elevator and had supervision and control over such parts of the building as did not remain in the exclusive possession of the tenants.

In February of 1920 the lessee of a restaurant conducted in the building had vacated the premises, leaving in the cellar a large number of cats. The elevator operator, an employee of the owners, asked the plaintiff if she would feed the cats to keep them from starving. The plaintiff not only did this, but thereafter continued to supply the animals with food until they could be removed by the Society for the Prevention of Cruelty to Animals. The work of removal apparently commenced at once, but for some reason was not complete and effectual. Perhaps the cats were not as anxious to leave as the plaintiff and the defendants' agents were to have them. Between February and September the plaintiff telephoned the society on numerous occasions which resulted in the removal of many of the cats. The plaintiff personally on several occasions carried cats to the society's office. On September 23, 1920, only three cats remained. During all this period with the consent of those in charge of the building and at their request, the plaintiff fed the cats which had not been removed by the society or by herself, and in this particular was doing that which the owner should have done for the welfare of his tenants. A live cat may or may not be an advantage and benefit around a building, but there is no question about a dead one.

In the summer Roscoe Staats took charge of the building for the defendants. The evidence tended to show that he was an incompetent, inefficient and dangerous man to have about an apartment house as superintendent and to do the work which his position demanded. Frequent complaints were made to the defendants and their agents regarding him. There was testimony that he was drunk most of the time; that he would run the elevator up and down without permitting people to get out until he got ready to let them out and then he would let them out on a floor they did not want; that he had assaulted callers, insulted visitors, tried to break into apartments. All these matters were called to the attention of the defendants and their agents, and relief was promised. No relief came, however, until after the assault for which this action is brought, and then it came speedily in the almost immediate discharge of Staats.

On the evening of September 23 the plaintiff with one of her pupils — for she was a music teacher — entered the cellar about six o'clock in the evening, with a saucer of bits for the cats, when she was met by the drunken superintendent, and the following scene took place: " A. I saw him — Staats came from behind something, from the dark part of the cellar, he came forward reeking with drink, and he said: ' I don't want you to feed those cats.' ' Why,' I said, ' you wouldn't want the cats to starve? ' And I said: ' I am just feeding them until the society man can come and take them away, as soon as he can catch them.' And he swore and used indecent language, and swore, and finally he picked up a gun from the side or the corner, and pointed it at my face; and it was just within a foot or two of my face; and I stepped around and put up my hands, pushed it from my face — he pulled the trigger. Q. He pulled the trigger? A. He pulled the trigger, yes, and I pushed it away from my face; and with that he snatched it up, raised it and

came down on my hand with the barrel. * * * The left hand." The fifth metacarpal bone was fractured.

On this evidence the Appellate Division has dismissed the complaint upon the theory that the plaintiff was a trespasser in the cellar.

Under the complaint the plaintiff could have maintained a cause of action for an assault by the defendants' servant while acting in the performance of his work and within the scope of his authority for the defendants; or else an action for negligence in that the defendants knowingly kept and maintained on their premises as a janitor a man whom they knew to be a drunkard, incompetent and dangerous to tenants, and thus through their negligence caused injury to the plaintiff. The complaint is broad enough to cover either one of these causes of action. The plaintiff tried the case under the latter theory and the court so instructed the jury. The judge in his charge left it to the jury to determine whether the defendants were negligent in employing a man whom they knew to be incompetent and dangerous, liable to cause injury, and whether the plaintiff was injured through that neglect without negligence upon her part. The jury found all the facts in favor of the plaintiff and could hardly have done otherwise, as the defendants offered very meagre proof to contradict the plaintiff and her witnesses.

There was ample evidence of the defendants' negligence. The incapacity and intoxication of the superintendent was proved by other witnesses than the plaintiff. The assault was testified to by the plaintiff and her companion, and the knowledge of the defendants as to Staats' viciousness was shown by testimony of repeated complaints made to Mr. Anderson, the agent, by different tenants. The plaintiff was no trespasser in the cellar; as a tenant she had a right to go there. The cellar was for use of the tenants for storage purposes; but whether it were or not, she had been going into the cellar for over

six months to feed the cats at the request of the owners' agents and employees and had kept the animals alive and caused their removal with the acquiescence and consent of the superintendent. The evidence as presented on this record tends to show an unjustifiable and unprovoked assault upon a tenant of an apartment house by a superintendent kept in his position in spite of the complaints of the tenants, and with full knowledge of the defendants' agents of his habits and disposition. This makes out a cause of action and the complaint should not have been dismissed.

As the Appellate Division has reversed upon the facts, as well as upon the law, we cannot reinstate the verdict, but must order a new trial, and judgment as so modified affirmed, with costs in this court and Appellate Division to abide the event.

Hiscock, Ch. J., Cardozo, Pound, McLaughlin, Andrews and Lehman, JJ., concur.

Judgment accordingly.