## L. C. PORTER v. GRENNAN BAKERIES, INC. AND ANOTHER.[1]

December 22, 1944.

No. 33,795.

[1]Reported in 16 N. W. (2d) 906.

*Maugridge S. Robb,* for appellant.

*Cummins & Cummins,* for respondent.

PETERSON, JUSTICE.

Plaintiff sued to recover damages for the loss of an eye sustained as the result of an assault committed upon him on August 21, 1942,

by the defendant Smith. Liability on the part of the defendant Grennan Bakeries, Inc. is predicated upon the doctrine of *respondeat superior,* it being claimed by plaintiff that the assault was committed by Smith for and on behalf of Grennan and within the course and scope of his employment. The answer insofar as here material denied that the assault was committed within the course and scope of the employment.

The evidence adduced showed that plaintiff was employed as a cake and bread salesman by the Continental Baking Company; that the defendant Smith was employed as a cake salesman by the defendant Grennan Bakeries, Inc.; that plaintiff and Smith used trucks owned by their respective employers to deliver the products sold by them; that each had a definite sales territory assigned to him by his employer and that their territories overlapped. The assault was committed in the grocery store of one Hussey located in the territory common to both plaintiff and Smith.

It appeared that many grocers were customers of both Continental and Grennan. It was the practice of grocers to display bread and cakes on racks. It is undisputed that the grocers controlled the racks and that arrangements for space thereon were made by the bakery salesmen and the grocers. Where a grocer was a customer of more than one bakery, he allotted space thereon to each bakery for the display of its goods. The location and the amount of space were regarded as important advertising advantages and were keenly sought by the salesmen. While the racks were under the control of the grocers and salesmen were required to make arrangements with them for space, in practice they often encroached on each other's space and interfered with each other's arrangement and display of his products. The manner of conducting the sales brought the salesmen into keen competition with each other and produced considerable hard feelings and friction.

The defendant Smith, feeling aggrieved and angered because of what he considered encroachment on his space and interference by plaintiff with his display rights in some stores served by them, determined to put an end to the alleged wrongs. To this end, he

sought plaintiff, whom he found in Hussey's store. Hussey was a customer of Continental but not of Grennan. At that time plaintiff was in Hussey's store selling him Continental products in the course of his employment. Smith had no purpose in going into Hussey's store except to adjust his differences with plaintiff. It is undisputed that, when he entered Hussey's store, Smith cursed and swore at plaintiff and accused him of taking too much space on racks shared by them in other stores. In order to avoid having trouble in the store, plaintiff suggested that he and Smith step outside. After they got outside, Smith again cursed and swore at plaintiff, renewed his accusations, and told plaintiff to take off his glasses. Plaintiff asked Smith what he meant, and Smith thereupon said, "Here is a sample of it," and hit plaintiff in the eye, causing injuries necessitating its removal.

Plaintiff's claim is that Smith assaulted him not out of anger but for the purpose of executing his duties as Grennan's employe to maintain and protect its rights on the racks in various stores and to further its business by thereby enabling it the better to sell its products. Defendant Grennan claimed that committing assaults upon competitors was not within the scope of Smith's employment and that, when he entered Hussey's store for the purpose mentioned, he entirely departed therefrom. To show that the scope of the employment included the acts in question, plaintiff offered to show that Smith was a surly, troublesome fellow who had considerable trouble with salesmen of other companies concerning rack space; that one of them put an end to his troubles with Smith only by threats to "beat" him; and that such facts were known to Grennan. The testimony was offered "in support of our [plaintiff's] contention that it was the duty of these drivers to take care of those racks and see that they got plenty space on them." The testimony was ruled out as immaterial.

Plaintiff's offer to read a deposition of one Rusinko, a police officer, taken in behalf of the defendant Smith, was ruled out upon defendants' objection. Deponent's testimony tended to show that Smith admitted that he committed the assault in the manner and

18

for the reason shown by the testimony taken orally at the trial. When Smith was called for cross-examination under the statute, the trial judge inquired of plaintiff's counsel the purpose in calling him and informed counsel that he could inquire concerning Smith's relationship with his employer, but that it was not permissible to do so as regards the affray, to which counsel responded, "I wasn't intending to touch upon that." No exception was taken to the ruling, and it was not assigned as error in the notice of motion for a new trial. At the close of plaintiff's case, defendant Grennan was permitted, over plaintiff's objection, to rest provisionally for the purpose of moving for a directed verdict, which was granted upon the ground that the assault was not committed by Smith in the course of and within the scope of the employment.

Plaintiff had a verdict against Smith and appeals. On the appeal plaintiff contends that the trial court erred (1) in holding that the assault was not committed within the course and scope of Smith's employment; (2) in ruling out testimony relative to Smith's prior acts and Grennan's knowledge thereof to show that the assault in question was committed in the course of and the scope of the employment; (3) in ruling out the Rusinko deposition; (4) in limiting the cross-examination of Smith; (5) in granting Grennan leave to rest provisionally to make a motion for a directed verdict; (6) in granting the motion; and (7) in ruling out a conversation between Grennan's former supervisor and plaintiff.

■ There was considerable argument whether our rule that the master is liable for his servant's torts, including assaults, committed within the scope of the employment, regardless of whether he was authorized expressly or impliedly to use force,[2] was modified

[2]See, Schmidt v. Minor, 150 Minn. 236, 184 N. W. 964; Cressy v. Republic Creosoting Co. 108 Minn. 349, 122 N. W. 484; Merrill v. Coates, 101 Minn. 43, 111 N. W. 836; Friedell v. Blakely Printing Co. 163 Minn. 226, 203 N. W. 974; Manion v. Jewell Tea Co. 135 Minn. 250, 160 N. W. 767; Barrett v. M. St. P. & S. S. M. Ry. Co. 106 Minn. 51, 117 N. W. 1047, 18 L.R.A.(N.S.) 416, 130 A. S. R. 585; 4 Dunnell, Dig. & Supp. § 5833; 35 Am. Jur., Master and Servant, § 574.

by our decision in Plotkin v. Northland Transp. Co. 204 Minn. 422, 283 N. W. 758. It is not necessary now to answer that question. Quite aside from anything said in the Plotkin case, the rule definitely is that a servant is not within the scope of his employment when he is not doing what he was employed to do and when he departs from the area of his service. Slater v. Advance Thresher Co. 97 Minn. 305, 107 N. W. 133, 5 L.R.A.(N.S.) 598; Shipp v. Georgia Power Co. 67 Ga. App. 867, 21 S. E. (2d) 458; Restatement, Agency, § 345, *comment b.* Here, the employment included within its scope the selling of cake to Grennan's customers in their stores and obtaining from the grocers, not other salesmen, the best possible display space on the racks. The commission of assaults upon competitors was neither authorized nor contemplated. When Smith was in and about Hussey's store, he was not engaged in selling cake to Grennan's customers or arranging with them for display space. He was not there doing anything he was employed to do. The area of Smith's service included travel over his route and the stores of Grennan's customers. When he went to Hussey's store, he departed from the space limits of his employment. He was then where he was not authorized to be. Consequently, Smith was not within the scope of his employment when he assaulted plaintiff, because he was not then doing what he was employed to do, and because he had then departed from the space limits thereof. In respect to the last-mentioned ground, the instant case is stronger in favor of the defendant Grennan than the Plotkin case, because there the servant was on the highway with his bus, a place where he had a right to be, whereas here Smith, the servant, had no business at all in Hussey's store. The most favorable view of his conduct is that he took matters into his own hands and departed from his employment to commit a most serious wrong upon plaintiff.

■ The evidence of Smith's prior interference and trouble with other salesmen concerning space on racks and of the fact that one of the salesmen threatened to beat him, even if known to Grennan, merely tended to show the admitted fact that it was part of Smith's duties to obtain the best space possible on the racks for the display

of Grennan's products. The evidence was admissible for the purpose for which it was offered, viz., to show that it was part of Smith's duties to obtain desirable space on the racks to display Grennan's goods. Its exclusion under the circumstances was not prejudicial, because the fact which the evidence was offered to prove was taken as established and because further proof thereof would not have changed the fact situation upon which Grennan's liability depended. Error in excluding material evidence is no ground for a new trial when, taking into consideration all the evidence in the case, including that erroneously excluded, the verdict rendered, whether directed by the court or returned by the jury, was the only one warranted by the law applicable to the case. First Nat. Bank v. Malmquist, 158 Minn. 140, 197 N. W. 271; 5 Dunnell, Dig. & Supp. § 7182. This is such a case. The directed verdict was right as a matter of law. If, however, the evidence taken at the trial, either alone or in connection with that excluded, had established liability against Grennan, the exclusion of the evidence in question would have been prejudicial.

On the argument here, plaintiff contended that the evidence was admissible under the rule of Cressy v. Republic Creosoting Co. 108 Minn. 349, 122 N. W. 484, supra, to show that defendant Grennan by ratification of and acquiescence in Smith's prior conduct had enlarged the scope of the employment so as to include assaults committed by him upon competing salesmen, and that, because of that fact, exclusion of the evidence was prejudicial. Aside from the fact that the testimony was not offered for such purpose, the argument has no application here, because the evidence did not relate to prior assaults committed by Smith upon others. There were no assaults which Grennan could or did ratify or acquiesce in.

■ Plaintiff insists, however, that, while the evidence of Smith's prior difficulties with other drivers regarding rack space did not show any prior assaults by him, it did show that he had a propensity to become involved in quarrels and assaults, and that, consequently, Grennan was liable upon the ground that it retained in its employment a servant who, to its knowledge, was in the habit of miscon-

ducting himself in a manner likely to result in the commission by him of assaults upon others. No such ground of liability was pleaded. The evidence was not offered to sustain such a liability. What plaintiff tried to do by the offered evidence was to establish liability upon the separate and additional ground of personal fault of Grennan in retaining in its employment an employe dangerous to others. This was not permissible.

Under the doctrine of *respondeat superior*, according to the generally accepted view, vicarious liability to third persons is imposed upon the master for his servant's torts, not because the master is at fault, or because he authorized the particular act, or because the servant represents him, but because the servant is conducting the master's business, and because the social interest in the general security is best maintained by holding those who conduct enterprises in which others are employed to an absolute liability for what their servants do in the course of the enterprise. Loucks v. R. J. Reynolds Tobacco Co. 188 Minn. 182, 246 N. W. 893; Elliason v. Western Coal & Coke Co. 162 Minn. 213, 202 N. W. 485; Penas v. C. M. & St. P. Ry. Co. 112 Minn. 203, 127 N. W. 926, 140 A. S. R. 470, 30 L.R.A.(N.S.) 627; New York Cent. R. Co. v. White, 243 U. S. 188, 37 S. Ct. 247, 61 L. ed. 667, L. R. A. 1917D, 1, Ann. Cas. 1917D, 629; Standard Oil Co. v. Anderson, 212 U. S. 215, 29 S. Ct. 252, 53 L. ed. 480; Farwell v. Boston & W. R. Corp. 4 Metc. (45 Mass.) 49, 38 Am. D. 339 (per Shaw, Chief Justice); Pound, Law and Morals, pp. 76-77. Where the doctrine of *respondeat superior* is relied on as a basis for recovery by a third person, the tortious act of the servant committed in the scope of his employment, and not the master's fault or the absence of it in hiring or retaining the servant, is the basis of liability. The master is held liable for the servant's tort. Fonda v. St. Paul City Ry. Co. 71 Minn. 438, 74 N. W. 166, 70 A. S. R. 341; Carlson v. Connecticut Co. 94 Conn. 131, 108 A. 531, 8 A. L. R. 569, and annotation; 35 Am. Jur., Master and Servant, §§ 548, 597. Consequently, where a cause of action for a servant's assault is based upon the doctrine of *respondeat superior,* the fault of the master, if any, in retaining in

his employment an employe known to be likely to commit assaults, is immaterial, since it does not affect the master's liability one way or the other. Linden v. City Car Co. 239 Wis. 236, 300 N. W. 925.

A master's liability for retaining in his employment a servant likely to commit assaults upon others rests upon personal fault in exposing others to unreasonable risk of injury in violation of the master's duty to exercise due care for their protection. Rahmel v. Lehndorff, 142 Cal. 681, 76 P. 659, 100 A. S. R. 154, 65 L. R. A. 88. The basis for such liability is much the same as that for harm resulting from harboring dangerous and vicious animals. In both classes of cases liability is discussed in terms of *harboring*. See, Rahmel v. Lehndorff, *supra*. In Dean v. St. Paul Union Depot Co. 41 Minn. 360, 363, 43 N. W. 54, 55, 16 A. S. R. 703, 705, 5 L. R. A. 442, 444, we held that a depot company was liable for an assault upon a patron committed by its tenant's employe known by it to have a propensity to commit such acts. There we expressed the underlying principle in cases of this kind in the following language:

"* * * It [the depot company] had no more right, therefore, to knowingly and advisedly employ or allow to be employed, in its depot building, a dangerous and vicious man, than it would have to keep and harbor a dangerous and savage dog or other animal, or to permit a pitfall or trap into which a passenger might step as he was passing to or from his train."

*Cf.* Curran v. Olson, 88 Minn. 307, 92 N. W. 1124, 60 L. R. A. 733, 97 A. S. R. 517, where the master was held liable under the doctrine of *respondeat superior* for an assault upon a patron in his saloon committed by vicious and lawless persons whom his bartender permitted to be there.

Where liability is asserted under the doctrine of *respondeat superior,* the inquiry, aside from that concerning the employment, relates to the nature of the servant's act. Where personal fault of the master for retaining an employe dangerous to others is asserted, the inquiry relates to the master's acts and assumes much the same scope as in cases involving liability for harboring danger-

ous and vicious animals. See, Olson v. Pederson, 206 Minn. 415, 288 N. W. 856. Because the master's liability for his servant's torts under the doctrine of *respondeat superior* and his liability for personal fault in retaining in his employment a servant dangerous to others rest upon essentially different grounds, and because the nature of the inquiry to determine the respective liabilities is different, plaintiff should be required to allege specifically the personal fault. Proof of personal fault of the master is not permissible under allegations predicating liability upon the doctrine of *respondeat superior*. 6 Labatt, Master and Servant (2 ed.) § 2222, at page 6683, citing, among other cases, Fonda v. St. Paul City Ry. Co. 71 Minn. 438, 74 N. W. 166, 70 A. S. R. 341, *supra*. In no possible view of the case was it error to exclude the evidence in question.

■ Under Minn. St. 1941, § 597.12 (Mason St. 1927, § 9831), "every deposition may be read in evidence at the trial of the action or proceeding." Our rule, in accord with the weight of authority, is that where a deposition is not read in evidence by the party at whose instance it was taken, it may be introduced by his adversary. Byers v. Orensstein, 42 Minn. 386, 44 N. W. 129; Lougee v. Bray, 42 Minn. 323, 44 N. W. 194; Annotation, 134 A. L. R. 212. Where a party other than the one at whose instance the deposition was taken introduces it in evidence, he makes the deponent his witness. In re Smith, 34 Minn. 436, 26 N. W. 234. Although Rusinko's deposition was taken at Smith's instance, plaintiff had the right to read it in evidence. The ruling excluding it was error without prejudice, for the same reasons as was the exclusion of the evidence of Smith's prior difficulties with other drivers.

■ The ruling limiting plaintiff's cross-examination of Smith under the statute so as to exclude matters touching upon the affray must be sustained, because plaintiff expressly acquiesced therein, State v. Lucken, 129 Minn. 402, 152 N. W. 769, and because error was not assigned thereon in his notice of motion for a new trial. Underwood v. Town Board of Empire, 217 Minn. 385, 14 N. W. (2d) 459.

■ Granting defendant Grennan leave to rest provisionally at the close of plaintiff's evidence for the purpose of moving for a directed verdict was not error. The granting of such request rests in the sound discretion of the trial judge. Normandin v. Freidson, 181 Minn. 471, 233 N. W. 14. Where plaintiff objects, he is entitled to a dismissal without prejudice before the trial judge rules on the motion. Gans v. Coca-Cola Bottling Co. Inc. 205 Minn. 36, 284 N. W. 844; Willard v. Max A. Kohen, Inc. 202 Minn. 626, 279 N. W. 553. Where plaintiff does not exercise his right to dismiss in such a case before the trial judge rules on the motion and submits his case for decision upon defendant's motion for a directed verdict, he invokes the final action of the court and is bound by its decision. Gans v. Coca-Cola Bottling Co. Inc. *supra;* McElroy v. Board of Education, 184 Minn. 357, 238 N. W. 681. Here, plaintiff made a final submission, and the ruling is binding upon him.

■ Since it appeared as a matter of law that Grennan was not liable for the assault, it was not error to direct a verdict in its favor.

■ A further error was assigned with respect to the striking of a conversation between Grennan's former supervisor and plaintiff. The point was not argued. We deem it abandoned for want of argument.

Affirmed.