567 P.2d 1203

**CENTRAL ALARM OF TUCSON, an Arizona Corporation, Appellant,**

**v.**

**Nimer GANEM, Appellee.**

**No. 2 CA–CIV 2352.**

Court of Appeals of Arizona, Division 2.

May 3, 1977.

Rehearing Denied June 30, 1977.

Review Denied July 19, 1977.

Lesher, Kimble, Rucker & Lindamood, P. C., by Michael J. Gothreau, Tucson, for appellant.

Elmer W. Courtland, Tucson, for appellee.

## OPINION

RICHMOND, Judge.

On April 6, 1971, appellee entered into a written agreement with appellant, Central Alarm of Tucson, providing for the installation and maintenance of a burglar alarm system at appellee's place of business. The system was in part ultrasonic in that it was designed to be activated by air waves caused by movement in the protected area. When such movement was sensed, a signal would be transmitted to appellant's headquarters, and it was agreed that Central Alarm then would notify the police and dispatch its own agents to the alarm site. Appellant's manager testified that the success rate of all its systems was approximately 99 per cent, reflecting those instances where the burglary either was interrupted without loss or the burglar was apprehended without loss to the subscriber.

Pursuant to the agreement, appellant installed certain protective devices and a locked control box in appellee's pawn shop.

The control box contained a dial which regulated the intensity of the ultrasonic portion of the alarm system. The dial could be set from 0 to 10, depending upon the sensitivity desired. At a setting of 0, however, no alarm would be received at appellant's headquarters.

On the night of January 12, 1974, there was a burglary of appellee's establishment, resulting in a loss by theft of $17,044.02. Entry apparently was made through a hole cut in the roof at the rear of the store. Although the alarm system was in working order, the sensitivity of the system had been lowered by parties unknown to a 0 setting and the intruders were not detected. A spokesman for appellant testified that for the convenience of appellant's maintenance men, the master key to the control box was kept on the top of the box, which was located more than seven feet from the floor. He conceded that this was not a safe practice.

Appellee's complaint alleged breach of contract and negligence. The matter was tried to the court and judgment was entered against appellant in the amount of $17,044.02. The trial court found that appellant had negligently breached its agreement, and that said negligence proximately caused the loss sustained by appellee. It further ruled that a contractual provision limiting appellant's liability was a penalty and therefore invalid.

Two questions have been presented for our determination:

(1) Assuming *arguendo* that appellant was negligent, was such negligence the proximate cause of appellee's loss?

(2) Should appellee's damages have been determined in accordance with the terms of the agreement between the parties?

■ Arizona courts have repeatedly defined proximate cause as "that which, in a natural and continuous sequence, unbroken by an efficient intervening cause, produces an injury, and without which the injury would not have occurred. [Citations omitted]" *Brand v. J. H. Rose Trucking*

*Company,* 102 Ariz. 201, 205, 427 P.2d 519, 523 (1967). Foreseeability plays a role in determining the presence or absence of proximate cause, *Wilson v. City of Tucson,* 8 Ariz.App. 398, 446 P.2d 504 (1968), where it is contended that the "natural and continuous sequence" has been broken by an efficient intervening, hence superseding cause. As Division I of this court stated in *City of Phoenix v. Schroeder,* 1 Ariz.App. 510, 516–17, 405 P.2d 301, 307 (1965):

"An intervening cause (force or act) is an independent cause which steps between the original wrongful act or omission of the defendant and the injury to the plaintiff, alters the natural and normal sequence of events and produces a result which would have not otherwise occurred. Not all intervening causes are superseding causes. A superseding cause is an intervening cause which by its nature becomes the proximate cause of the injury and relieves the defendant of any liability for said injury.

"For an intervening cause to be a superseding cause it must be a cause which could not have been reasonably foreseen or anticipated by the defendant. Stated differently, in order for an intervening cause to supersede the original negligence, the intervening cause must be so extraordinary that the defendant could not have reasonably anticipated that the cause would intervene. [Citations omitted]"

■ The broad rule of law that a third person's criminal act can never be the natural sequence in the link of circumstances leading up to an injury, but must be considered as the efficient proximate cause, enunciated in *Crandall v. Consolidated Tel., etc., Co.,* 14 Ariz. 322, 127 P. 994 (1912), was rendered impotent by *Nichols v. City of Phoenix,* 68 Ariz. 124, 202 P.2d 201 (1949). Under the *Nichols* rationale the crucial question in each instance is the foreseeability of illegal conduct or the concurrence of the original negligent conduct with the illegal intervening acts of the third person. Thus, it is obvious that independent criminal acts of a third person, under certain

circumstances, need not be superseding causes. *See Massengill v. Yuma County,* 9 Ariz.App. 281, 451 P.2d 639 (1969), vacated on other grounds, 104 Ariz. 518, 456 P.2d 376 (1969). It is hard to imagine circumstances more appropriate than those before us, where the only reason for installation and maintenance of the alarm system was the foreseeability of a possible burglary attempt.

The trial court found as a fact that appellant was negligent in the maintenance of the ultrasonic alarm system by leaving the key where an unauthorized person could obtain access to the controls of the system and deactivate it. As a proximate result of this negligence, burglary being foreseeable, appellee sustained loss. We agree. The intervening act was certainly within the ambit of risk created by appellant. *See Barclay Kitchen, Inc. v. California Bank,* 208 Cal.App.2d 347, 25 Cal.Rptr. 383, 388. Further, it appears that "but for" appellant's negligence the loss would not have occurred approximately 99 times out of 100, based on the success rate of a properly maintained system.[1] Our conclusions on the issue of proximate cause are reinforced by an analysis of decisions from other jurisdictions. *See Better Food Markets v. American Dist. Tel. Co.,* 40 Cal.2d 179, 253 P.2d 10 (1953); *McCane-Sondock Protect. Systems v. Emmittee,* 540 S.W.2d 764 (Tex. Civ.App.1976); *McCane Sondock Det. Agcy. v. Penland Dist., Inc.,* 523 S.W.2d 62 (Tex. Civ.App.1975).

Appellant's second contention is that appellee's damages should have been assessed in accordance with the terms of the agreement between the parties, which provided, inter alia:

"It is agreed that the Company is not an insurer and that the payments hereinbefore named are based solely upon the value of the services herein described and it is not the intention of the parties that the Company assume responsibility for any loss occasioned by malfeasance or misfeasance in the performance of the services under this contract or for any loss or damage sustained through burglary, theft, robbery, fire, water or other cause or any liability on the part of the Company by virtue of this agreement or because of the relation hereby established. If there shall, notwithstanding the above provisions, at any time be or arise any liability on the part of the Company by virtue of this agreement or because of the relation hereby established, whether due to the negligence of the Company or otherwise, such liability is and shall be limited to a sum equal in amount to the rental service charged hereunder for a period of service not to exceed six months, which sum shall be paid and received as liquidated damages. Such liability as herein set forth is fixed as liquidated damages and not as a penalty and this liability shall be complete and exclusive. That in the event Subscriber desires the Company to assume greater liability for the performance of its services hereunder, a choice is hereby given of obtaining full or limited liability by paying an additional amount under a graduated scale of rates proportioned to the responsibility, and an additional rider shall be attached to this agreement setting forth the additional liability of the Company and additional charge. That the rider and additional obligation shall in no way be interpreted to hold the Company as an insurer."

Provisions limiting liability and the amount of damages under burglar alarm service agreements have been uniformly upheld. *Better Food Markets v. American Dist. Tel. Co.,* supra; *Feary v. Aaron Burglar Alarm, Inc.,* 32 Cal.App.3d 553, 108 Cal.Rptr. 242 (1973); *Niccoli v. Denver Burglar Alarm, Inc.,* 490 P.2d 304 (Colo.App.

---

1. The case *sub judice* is distinguishable from *Nirdlinger v. American District Telegraph Co.,* 245 Pa. 453, 91 A. 883, Ann.Cas.1915D, 1184, and *Vastola v. Connecticut Protective System,* 133 Conn. 18, 47 A.2d 844 (1946), where mere speculation was involved in determining whether the ringing of the alarm would have prevented the loss. Nothing was introduced in either of those cases from which a legal inference could be derived that the losses would have been averted had the systems been in order.

1971); *Bargaintown of D. C., Inc. v. Federal Engineering Co., Inc.,* 309 A.2d 56 (D.C.App. 1973); *Nicholas v. Miami Burglar Alarm Co.,* 266 So.2d 64 (Fla.App.1972) (dictum), vacated on other grounds 339 So.2d 175 (Fla.1976); *Alan Abis, Inc. v. Burns Electronic Security Serv. Inc.,* 283 So.2d 822 (La.App.1973); *Morgan Co. v. Minnesota Min. & Mfg. Co.,* 246 N.W.2d 443 (Minn. 1976); *Foont-Freedenfeld Corp. v. Electro-Protective Corp.,* 126 N.J.Super. 254, 314 A.2d 69 (1973), affirmed, 64 N.J. 197, 314 A.2d 68 (1974); *Rinaldi & Sons v. Wells Fargo Alarm Serv.,* 47 A.D.2d 462, 367 N.Y. S.2d 518 (1975), reversed on other grounds, 39 N.Y.2d 191, 383 N.Y.S.2d 256, 347 N.E.2d 618 (1976); *Schepps v. American District Telegraph Co. of Texas,* 286 S.W.2d 684 (Tex.Civ.App.1955).

■ The cited decisions apply both principles of liquidated damages and limitation of damages. We believe that the clause cannot validly be one for liquidated damages, in that it makes no attempt to reasonably forecast just compensation for harm caused. *See Marshall v. Patzman,* 81 Ariz. 367, 306 P.2d 287 (1957). The question thus is one of limitation of damages. This approach was adopted in *Morgan Co. v. Minnesota Min. & Mfg. Co.,* supra, quoting from *Wedner v. Fidelity Security Systems, Inc.,* 228 Pa.Super. 67, 307 A.2d 429 (1973), affirmance by an equally divided court, as follows:

" 'The court below treated the matter of [sic] one of liquidated damages * * *.

" 'However, although he ably supported his judgment on the theory of liquidated damages, he did not have to decide the matter on the premise alone.

" 'Much reliance is placed upon the Restatement of Contracts § 339, but the appellant disregards Comment g, which provides: "An agreement limiting the amount of damages recoverable for breach is not an agreement to pay either liquidated damages or a penalty. Except in the case of certain public service contracts, the contracting parties can by agreement limit their liability in damages to a specified amount, either at the time

of making their principal contract, or subsequently thereto. Such a contract [sic] does not purport to make an estimate of the harm caused by a breach; nor is its purpose to operate in terrorem to induce performance." It can hardly be contended that the words "liability is and shall be limited" to the yearly service charge of $312 are anything but a limitation of liability and not really a liquidated damage clause. Surely, if the loss to the customer was $150, the expressed mutual assent was that recovery should be $150 and not $312.

" 'The fact that the words "liquidated damages" were used in the contract has little bearing on the nature of the provision. It is well settled that in determining whether a particular clause calls for liquidated damages or for a penalty, the name given to the clause by the parties "is but of slight weight, and the controlling elements are the intention of the parties and the special circumstances of the case." * * * The same principle applies here. Nor can it be argued that the use of these words automatically creates an ambiguity to be resolved against the appellee as the drafter of the instrument. The meaning of the words is clear—the fixed limit of liability was $312. We are, therefore, not dealing with a liquidated damage problem.' "
246 N.W.2d at 447-48.

■ In our opinion, it would be both unreasonable and unfair to expect appellant to assume the responsibilities arising under a burglary insurance policy upon payment of a nominal fee, i. e., $43.00/mo. *See Foont-Freedenfeld Corp. v. Electro-Protective Corp.,* supra. Had appellee desired that appellant assume greater liability, additional amounts could have been made payable under a graduated scale of rates, as provided in the agreement. Further, it is clear that such provisions are valid when applied to claims grounded in ordinary negligence. *Morgan Co. v. Minnesota Min. & Mfg. Co.,* supra.

Because we do not regard the contractual provision in question as unconscionable or

against public policy under the circumstances of this case, we vacate the award of $17,044.02 and the judgment is modified to award appellee the sum of $258.00 and costs.

Affirmed as modified.

HOWARD, C. J., and HATHAWAY, J., concurring.