574 P.2d 1303

Juanita **PENDLETON**, Appellant,

v.

Ronald M. **CILLEY** and Carolyn Joy **Cilley**, his wife, Appellees.

No. 13159.

Supreme Court of Arizona,
In Banc.

Feb. 2, 1978.

James A. Quisenberry, Casa Grande, for appellant.

Jones, Teilborg, Sanders, Haga & Parks by Frank A. Parks, Neil C. Alden, Phoenix, for appellees.

STRUCKMEYER, Vice Chief Justice.

Appellant, Juanita Pendleton, seeks reversal of a summary judgment entered in favor of Dr. Ronald M. Cilley and Carolyn Joy Cilley on her complaint charging medical malpractice. We have jurisdiction pursuant to Rule 47(e), 17A A.R.S. Rules of the Supreme Court. Judgment affirmed.

In determining whether summary judgment should have been granted, a reviewing court considers the matters presented in the light most favorable to the party opposing the motion. *Hall v. Motorists Insurance Corporation*, 109 Ariz. 334, 509 P.2d 604 (1973). So viewing the facts, the following is established for purposes of this appeal.

Dr. Cilley performed a total abdominal hysterectomy and salpingo-oophorectomy upon appellant on January 29, 1973 in Phoenix, Arizona, and discharged her from the hospital on February 5, 1973. Dr. Paul L. Singer, a urologist, saw appellant on May 22, 1973, at which time she complained of painful urination. He diagnosed an inflammation of the bladder and treated her for this. The inflammation had subsided by July 9, 1973, but on March 5, 1974, Dr. Singer discovered a ventral hernia and referred appellant to Dr. David James, a specialist in general surgery. Dr. James found a long midline suprapubic incisional hernia and performed a successful Martex graft operation, called a herniorrhaphy, to correct the problem. Appellant was discharged by Dr. James in June of 1975.

Appellant commenced this action against Dr. Cilley on January 22, 1975, alleging in Count I that Dr. Cilley did not properly close either the vaginal or abdominal entries; that Dr. Cilley failed to properly install and remove a catheter, thereby causing a bladder infection; that Dr. Cilley improperly supervised and attended the abdominal incision, thereby causing rupture and herniation of the abdominal muscles; and that Dr. Cilley did not perform the hysterectomy according to the applicable

standard of care. Count II alleged that Dr. Cilley knew his negligent treatment of appellant would cause additional medical difficulties and that he "falsly [sic] represented to the [appellant] that these difficulties were of a temporary nature and would properly heal in due time."

Dr. Cilley moved for summary judgment on January 13, 1976, and this motion was granted on March 18, 1976. The record before the court consisted of the pleadings, Dr. Cilley's affidavit, the deposition of Roger Pendleton, appellant's husband, and the depositions of Doctors Singer and James. The minute entry for March 18, 1976 noted that no responsive pleading was filed with the court.

Appellant cites us to the generally recognized principles of law to the effect that a summary judgment is only granted where there is no genuine issue as to a material fact, and that a litigant is entitled to a trial if there is the slightest doubt as to the facts. See *Peterson v. Valley National Bank of Phoenix*, 90 Ariz. 361, 368 P.2d 317 (1962). Appellant also urges that even if there is no factual dispute, a summary judgment is not warranted where the possible inferences to be drawn from all the circumstances are conflicting.

■ It is established that a physician's negligence must be shown by expert medical testimony unless the negligence is so grossly apparent that a layman would have no difficulty in recognizing it. *Harvey v. Kellin*, 115 Ariz. 496, 566 P.2d 297 (1977); *Riedisser v. Nelson*, 111 Ariz. 542, 534 P.2d 1052 (1975); *Boyce v. Brown*, 51 Ariz. 416, 77 P.2d 455 (1938). The burden of establishing negligence must be met both at trial and in opposition to the defendant's motion for summary judgment. *Riedisser,* supra; *Abernethy v. Smith,* 17 Ariz.App. 363, 498 P.2d 175 (1972). We have said that a party opposing a motion for summary judgment must show that evidence is available which would justify a trial of that issue. *Crocker v. Crocker,* 103 Ariz. 497, 446 P.2d 226 (1968).

■ In this case, appellant did not come forward with evidence which would justify a trial on the issue of negligence. No expert medical testimony was presented in support of her claims. Dr. Cilley, on the other hand, introduced the expert medical testimony of Doctors Singer and James which made a prima facie showing that he complied with the applicable standard of care. We do not think that it can be said that as a matter of common knowledge appellant's bladder troubles and hernia were the result of Dr. Cilley's negligence. Expert testimony was required.

It was Dr. Singer's testimony by deposition that women who have catheters implanted are more likely to develop bladder trouble and that the likelihood of inflammation would exist even following the most stringent precautions and care. Dr. Singer also testified that after a gynecological operation, a urinalysis to determine a bladder infection would ordinarily not be done unless the patient developed symptoms of cystitis—the symptoms mostly being complaints by the patient. Dr. Singer's opinion, based solely on statistical studies of similar cases, was that appellant's bladder inflammation was due to the catheter used by Dr. Cilley. He also testified that the catheter technique is universally used and is the standard practice in the locality. Dr. Singer did not have an opinion regarding the standard of care for the abdominal incision.

Dr. James' testimony on deposition was that a vertical midline incision is one of the accepted and recognized techniques for performing an abdominal hysterectomy and that going through an existing scar is traditional and within the accepted standard of care in Phoenix, Arizona. He concluded his testimony by stating that on the basis of his examination of the hospital's operation chart, the incision made by Dr. Cilley did not fall below the usual and customary care in the locality. Dr. James also testified:

"Q. Can you tell me what percentage of patients who had abdominal surgery develop incisional hernias?

A. The figures on that I don't recall statistically. * * *

*       *       *       *       *       *

Q. Would this be a relatively common occurrence in women in their mid forties who have had abdominal hysterectomies?

A. It's not a common occurrence. * *

So there is a recurrence rate of three to five percent of ingunial [sic] hernia repairs and there is probably an even higher rate of recurrence in ventral incisions, abdominal incisions elsewhere in the belly."

Dr. James was of this opinion:

"Coughing would tend to increase the chances of developing a separation, a deep separation with subsequent or later development of an incisional hernias [sic] but from the studies that have appeared in the literature, most separations purely depend on the nutritional status of the patient and upon the cement substance of the body, the ability of the body to form collagen to make that incision stick together.

Coughing could contribute, but basically if we look at the medical literature, the deficiency is primarily within the patient themselves, poor healing, poor cement substance of the body."

The following hypothetical question was asked of Dr. James:

"Q. * * * Assuming hypothetically that a patient developed an incisional hernia during a coughing spell five days postoperative, after an abdominal hysterectomy, and assuming furthermore that that coughing spell occurred at approximately 4:00 o'clock in the morning, would delay in notifying that patient's physician until eight or nine in the morning exacerbate the injuries of that patient?"

To which he responded:

"A. To answer the question specifically, I don't think you can assume that the coughing spell necessarily initiated the separation which subsequently led to the production of an incisional hernia.

It could have, but basically to answer the question in my opinion a two, three or four hour wait to notify the attending physician would not have made any difference, assuming hypothetically that

there was weakening or separation of the incision at the time of the coughing episode, the damage would therefore already have been done."

This question was asked of Dr. James:

"Now, Doctor, you have not only examined but treated this patient with corrective surgery. What in your medical opinion was the cause of this hernia."

Dr. James responded:

"A. As indicated in my early testimony here, I think primarily its poor healing on the part of the patient, secondarily aggravation by coughing, straining, sneezing, et cetera."

Dr. James also described appellant as being moderately obese at the time of the hysterectomy and said that it was his experience a moderately obese woman would have a greater chance of developing an incisional hernia than a person of normal weight and height.

The trial court was justified in believing that Dr. James' testimony showed that Dr. Cilley did not act negligently in treating appellant.

"The question of a physician's skill or failure to use his skill is a material question of fact, and on a motion for summary judgment, the party opposing the motion must show that at trial, he would be able to show evidence that the physician lacked or did not apply the proper skills." *Riedisser v. Nelson*, 111 Ariz. at 544, 534 P.2d at 1054.

We emphasize, in the present case appellant offered no expert medical evidence which would indicate Dr. Cilley's treatment fell below the applicable standard of care. Appellant therefore failed to raise an issue of material fact regarding the hysterectomy and postoperative care. The granting of summary judgment against her on the issue of negligence was proper.

█ Appellant urges that the facts in Count II of her complaint were not contradicted. We disagree. As shown, the testimony of Dr. James established that Dr. Cilley acted within the applicable standard of care in performing the hysterectomy.

Dr. James found no evidence of negligent treatment, but, rather, attributed the cause of the hernia to "poor healing" and secondarily to "aggravation by coughing, straining, sneezing, et cetera." Dr. Singer testified that bladder problems occur in patients who have had catheters implanted in them for any length of time. The expert medical evidence therefore established that the medical difficulties experienced by appellant were not uncommon. She did not, however, controvert any facts, medical or otherwise, by which it might be inferred that Dr. Cilley's representations regarding her postoperative care were intended to deceive her as to her physical condition. Summary judgment as to the issue of misrepresentation was also properly entered against appellant.

Appellant also argues that the trial court erred in granting summary judgment prior to the completion of her discovery and prior to termination of discovery. It appears that Dr. Cilley's motion for summary judgment was filed on January 13, 1976 and was not granted until over two months later on March 18, 1976. We think that this provided appellant with ample time in which to make any necessary discovery or, if it was not sufficient, to move for a continuance under Rule 56(f), 16 A.R.S., Rules of Civil Procedure. That Rule provides:

"Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

We recognize that malpractice suits are often complex, but appellant had over a year from the time of filing her complaint to its dismissal in which to establish basic negligence.

Appellant's final argument is that the trial court erred in granting the summary judgment based upon the depositions of two out of five designated medical witnesses and Dr. Cilley's self-serving affidavit. This is a spurious argument. We said in *Stevens v. Anderson*, 75 Ariz. 331, 334, 256 P.2d 712, 714 (1953):

"This practice [summary judgment] was established for protection against compelling one to submit to the delay, expense and harassment of litigation upon mere assertions, when it is shown that competent evidence cannot be presented to prove same."

Judgment affirmed.

CAMERON, C. J., and HAYS, HOLOHAN, and GORDON, JJ., concur.