609 P.2d 1080

Patricia McGUIRE, Plaintiff/Appellant,

v.

ARIZONA PROTECTION AGENCY, a corporation, Defendant/Appellee.

2 CA–CIV 3389.

Court of Appeals of Arizona, Division 2.

March 3, 1980.

Rehearing Denied March 31, 1980.

Review Denied April 22, 1980.

Donald Estes, Tucson, for plaintiff/appellant.

Everett, Bury & Moeller, P.C. by Leonard Everett, Tucson, for defendant/appellee.

OPINION

MATTHEW W. BOROWIEC, Judge.

The sole issue to be decided in this case is whether defendant, Arizona Protection Agency, Inc., can be held liable for plaintiff's loss as a result of a criminal act of defendant's former employee, committed after termination of the employment. We believe there may be liability.

The trial court granted defendant's motion to dismiss for failure to state a claim upon which relief could be granted. We consider the motion to be one for summary judgment because matters outside the pleadings were presented. 16 A.R.S. Rules of Civil Procedure, rule 12(b). We find that defendant was not shown to be entitled to a judgment as a matter of law. 16 A.R.S. Rules of Civil Procedure, rule 56(c); *Chanay v. Chittenden*, 115 Ariz. 32, 563 P.2d 287 (1977).

The facts sufficient for our purposes, pieced together from the pleadings, the affidavit of defendant's vice-president accompanying the motion to dismiss, and plaintiff's opposition to the motion, are: Defendant contracted to install a burglar alarm system in plaintiff's home; the person defendant employed to do the work was either a wanted felon or a person with a long felony record; and after the work was completed and the employment terminated, the former employee returned to plaintiff's home, disconnected the alarm system and stole plaintiff's possessions, damaging plaintiff in the claimed sum of $371,800.00. Plaintiff alleges defendant was negligent in the ". . . employment and maintaining . . ." of this employee.

We find no case in point or a different rule pronounced by our appellate courts or legislature; therefore we look to the Restatement of Law. *Irwin v. Murphey*, 81 Ariz. 148, 302 P.2d 534 (1956); *Rodriguez v. Terry*, 79 Ariz. 348, 290 P.2d 248 (1955); *Reed v. Real Detective Publishing Co.*, 63 Ariz. 294, 162 P.2d 133 (1945).

An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to

another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal. Restatement 2d of Torts, § 302B.

The fact that the felon was at one time the employee of defendant does not prevent the application of the Restatement principle, supra. Comments to Restatement 2d of Torts, § 302B deal both with the conduct of employees of and strangers to the party found to be negligent.

■ In light of the sensitive nature of the work and the temptations and opportunity attendant thereto, defendant owed a duty to plaintiff to employ a responsible and trustworthy person, without a criminal proclivity that could reasonably be determined, to install the alarm system.

. . . an especial temptation and opportunity for criminal misconduct, brought about by the defendant, will call upon him to take precautions against it. Prosser on Torts, Fourth Edition, § 33, Page 174.

■ A case of like hue and not so dissimilar to ours that we cannot gain therefrom is this court's decision in *Central Alarm of Tucson v. Ganem*, 116 Ariz. 74, 567 P.2d 1203 (App.1977). In that case, defendant Central Alarm was held to be negligent for the burglary loss at plaintiff's pawn shop as a result of the criminal conduct of a third person unknown to defendant, who gained access to plaintiff's pawn shop and deactivated the alarm system installed by defendant. This was made possible by defendant leaving a key to the alarm system ". . . where an unauthorized person could obtain access to the controls of the system and deactivate it. . . ." *Id.*, 116 Ariz. at 77, 567 P.2d at 1206. The burglar in Central Alarm was not a former employee of defendant, but this is of little moment. In our case, defendant may have provided the key to the burglar by employing one of his character and propensity, and giving him access to plaintiff's home.

Unquestionably, defendant may be found negligent in knowingly employing a wanted felon or a felon with a long record to install the burglar alarm. If it could be negligence to employ such a person, then it could be negligence where this is not known to the employer but should have been known, especially in light of the sensitive nature of the work, the temptations inherent therein and the opportunities presented. The risk is there and the possible loss is certainly foreseeable.

It remains to be seen in the development of the facts whether the surreptitious entry and theft was the result of the employment of the felon; whether the felon's background projected the risk; and whether defendant had any knowledge of this background or could have acquired such knowledge. It remains to be determined whether defendant took the precautions a reasonable man would be required to take under the circumstances.

Reversed and remanded.

RICHMOND, J., concurs.

NOTE; Chief Judge JAMES D. HATHAWAY having requested that he be relieved from consideration of this matter, Superior Court Judge MATTHEW W. BOROWIEC was called to sit in his stead and participate in the determination of this decision.

HOWARD, Judge, dissenting.

The majority holds that an employer can be held liable for damages for the criminal acts of a former employee committed after the employment has terminated. It is my opinion that this holding is erroneous. Furthermore, even under this holding, the facts do not support a reversal.

An employer may be liable to a third person for the employer's negligence in hiring or retaining an employee who is incompetent or unfit. *Hersh v. Kentfield Builders, Inc.*, 385 Mich. 410, 189 N.W.2d 286 (1971); 53 Am.Jur.2d Master and Servant, Secs. 422, 436 et seq., and See Annot. 48 A.L.R.3d 359 "Employer's Knowledge of Employee's Past Criminal Record As Affecting Liability For Employee's Tortious Conduct", Prosser, Law of Torts, 4th Ed. states at 175:

"There are other situations in which the defendant will be held liable because his affirmative conduct has greatly increased the risk of harm to the plaintiff through the criminal acts of others. The defendant may bring the plaintiff into contact with individuals of known criminal tendencies, as for example, by hiring them, under conditions in which opportunity for crime is afforded."

In support of this statement, Prosser cites the following cases: *Hall v. Smathers*, 240 N.Y. 486, 148 N.E. 654 (1925); *Kendall v. Gore Properties*, 98 U.S.App.D.C. 378, 236 F.2d 673 (1956); *Hipp v. Hospital Authority of City of Marietta*, 104 Ga.App. 174, 121 S.E.2d 273 (1961); *Georgia Bowling Enterprises v. Robbins*, 103 Ga.App. 286, 119 S.E.2d 52 (1961); *De la Bere v. Pearson, Ltd.*, 1 K.B. 280 (1908). In all these cases the injury occurred during the employer-employee relationship, except for the case of *De la Bere v. Pearson, Ltd.*, supra, which involves a financial adviser who agreed to recommend a "good stockbroker" and thus assumed a duty to use due care.

The basis for holding the employer independently liable for hiring or retaining an unfit employee has been said to be much the same as that for harm resulting from harboring dangerous and vicious animals. *Porter v. Grennan Bakeries, Inc.*, 219 Minn. 14, 16 N.W.2d 906 (1944); *Dean v. St. Paul Union Depot Co.*, 41 Minn. 360, 43 N.W. 54 (1889). As was said by the court in *Dean v. St. Paul Union Depot Co.*, supra:

" * * * It [the depot company] had no more right, therefore, to knowingly and advisedly employ, or allow to be employed, in [the] depot building, a dangerous and vicious man, than it would have to keep and harbor a dangerous and savage dog or other animal, or to permit a pitfall or trap into which a passenger might step as he was passing to or from his train." 43 N.W. at 55.

One cannot be liable for "harboring" an incompetent or unfit employee if that employee is no longer employed. Appellant's duty to the appellee, which was the duty not to have an unfit employee, ended when the master-servant relationship was terminated.

The majority, however, chooses to ignore the legal relationship between the appellee and the wrongdoer and instead rests upon a statement from Prosser, Sec. 302 B; Restatement (Second) of Torts and *Central Alarm of Tucson v. Ganem*, supra.

The applicability of the *Ganem* case escapes me. The question there was whether the criminal act of a third person was an intervening cause. The original negligence of the alleged wrongdoer was assumed for the purposes of the opinion. It was a case dealing with foreseeability. We are not concerned here with mere foreseeability. In respect to the law of negligence foreseeability should not be confused with duty. *Pulka v. Edelman*, 40 N.Y.2d 781, 390 N.Y. S.2d 393, 358 N.E.2d 1019 (1976) and see *Goldberg v. Housing Authority of City of Newark*, 38 N.J. 578, 186 A.2d 291 (1962). The principle expressed in *Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 162 N.E. 99 (1928) is applicable to determine the scope of the duty only after it has been determined there is a duty.

Restatement (Second) of Torts, Sec. 302 B upon which the majority also relies, states that the actor is required to take precautions: [1]

"D. Where the actor has brought into contact or association with the other a person whom the actor knows or should know to be peculiarly likely to commit intentional misconduct, under circumstances which afford a peculiar opportunity or temptation for such misconduct."

It then gives the following illustrations:

"9. A is the landlord of an apartment house. He employs B as a janitor, knowing that B is a man of violent and uncontrollable temper, and on past occasions has attacked those who argue with him. C, a tenant of one of the apartments,

---

1. Prosser, upon which the majority also relies, generally follows the Restatement and should be read in the entirety, pp. 174–176.

complains to B of inadequate heat. B becomes furiously angry and attacks C, seriously injuring him. A may be found to be negligent toward C.

10. A, a young girl, is a passenger on B Railroad. She falls asleep and is carried beyond her station. The conductor puts her off of the train in an unprotected spot, immediately adjacent to a 'jungle' in which hoboes are camped. It is notorious that many of these hoboes are criminals, or men of rough and violent character. A is raped by one of the hoboes. B Railroad may be found to be negligent toward A."

In both of these foregoing examples the injury occurs during the period when the victim is being exposed to a risk by the actor. Not at some later time. This is crucial. In example 9 the actor has control or the right to control the wrongdoer and in example 10 the actor assumes control over the victim. In either instance, it seems only fair to say that there is a duty of due care upon the actor. But does that duty exist when the defendant has control of neither the wrongdoer, nor the victim?

Although Sec. 302 B of the Restatement makes it clear that its examples are not meant to be exclusive, it is worth noting that in the examples given as imposing liability we find (1) the actor has contractually, or otherwise, assumed a duty to protect the victim; (2) the actor has a duty to protect the victim because of the legal relationship of the parties; (3) the actor has the control or the right to control either the wrongdoer or the victim; (4) the actor has possession or control of the instrumentality which causes the injury. None of these are present here.

Comment *e* of the Restatement states that the actor can be liable:

"C. Where the actor's affirmative act is intended or likely to defeat a protection which the other has placed around his person or property for the purpose of guarding them from intentional interference. This includes situations where the actor is privileged to resume such a protection, but fails to take reasonable steps to replace it or to provide a substitute."

This appears to be the basis for the majority opinion although it is not clearly enunciated. The difficulty with this theory as applied to the facts adduced at the motion to dismiss, is that no one has shown of what the wrongdoer's past criminal conduct consisted. Suppose he had a history of conviction for child molestation? Would knowledge of this past conduct have made it foreseeable that he would commit a burglary? I do not believe that there can be negligence unless there is some connection between the past criminal conduct and the conduct which caused the loss. There was no such proof here and the burden was on the plaintiff to show such proof was available. *Pendleton v. Cilley*, 118 Ariz. 84, 574 P.2d 1303 (1978).