Chief Judge Breitel.
Plaintiff Rinaldi is a subscriber to *194 defendant Wells Fargo’s burglar alarm reporting service. Rinaldi sued Wells Fargo for breach of contract and negligence, alleging defendant’s failure to report a burglary signal. Supreme Court after trial dismissed the complaint. The Appellate Division reversed and directed judgment in favor of Rinaldi for $50, damages as limited by the liability clause in their agreement. Both parties appeal.
The issues are whether, if there were equally balanced evidence, plaintiff proved its case and, strongly raised by the parties and considered by the courts below, whether the contractual limitation of liability was valid.
There should be a reversal. It is a truism that a plaintiff must prove his case, and that means by a preponderance of the evidence. If the evidence is evenly balanced, plaintiff has not met its burden. The evidence on the issue of the causal relation between the failure to report the burglary signal and the burglary loss was evenly balanced as a matter of logic or law, and thus Rinaldi failed to prove its case by a preponderance of the evidence. In any event, in the absence of countervailing public policy, the contractual limitation of liability is enforceable.
On April 28, 1972, Rinaldi’s restaurant supply warehouse in Brooklyn was burglarized. Approximately 30,000 pounds of cheese, $200 in cash, and a truck were stolen.
The warehouse had been protected by an internal burglar alarm system. As an additional safeguard, in March, 1968, Wells Fargo installed an electrical circuit burglar alarm reporting system. The initial installation charge was $37.50, and the service charge was $10 per month. The agreement provided that Wells Fargo was "not an insurer and that the payments hereinbefore named are based solely on the value of the services described and, in case of failure to perform such service, and a resulting loss, [Wells Fargo’s] liability hereunder shall be limited to and fixed at the sum of Fifty Dollars ($50.00) as liquidated damages, and not as a penalty and this liability shall be exclusive.”
The reporting system was designed to monitor the internal burglar alarm, also an electrical system. From four to six subscribers’ burglar alarm systems, including Rinaldi’s, were connected to Wells Fargo’s central office by a party telephone line. A triggering of the internal burglar alarm in any particular premises would cause a coded signal to be sent to the central office.
*195 The reporting system could also produce an uncoded signal if an internally caused break in the circuit occurred anywhere in the interconnected alarm reporting system, even if not caused by the rarer incidence of a burglar’s intrusion. It was admitted by Wells Fargo that such a break "might mask an intrusion”, although the industry’s experience was to the contrary.
On April 28, 1972, at about 2:00 a.m., Wells Fargo received an uncoded signal indicating a break in the line to which Rinaldi’s internal alarm was connected. Wells Fargo followed its usual practice and reported the break only to the telephone company. At 6:30 a.m., the burglary was discovered. At the premises the link connecting the interacting burglary alarm, burglary reporting, and telephone systems had been cut.
The trial testimony regarding the method by which the burglars had foiled the system was largely inferential and sharply conflicting. Whether the "foiling of the system” occurred before or after the break in through the roof of the warehouse was of crucial importance in determining whether Wells Fargo’s failure to notify the police and Rinaldi upon receipt of the equivocal signal was the cause of the burglary loss.
Two experts testified for Rinaldi that, in their opinion, the burglars had first cut the significant link and then looted the warehouse at their relative leisure, taking anywhere from two to four hours. The implication of such testimony was that, had Wells Fargo promptly reported the signal to Rinaldi or the police, the burglary would have been frustrated. These opinions were based not upon any actual or closely calculated knowledge of the sequence of what happened but only upon a general inference based allegedly on general experience as to what that sequence would often be.
Wells Fargo’s expert testified contrarily to a different inference. In his opinion, also resting upon a general inference derived from what it was said general experience would prove to be the case, the burglars had entered through the concededly unprotected roof, looted the warehouse, and, just before leaving, in order to remove the loot through the regular means of egress, cut the link. The necessary implication of his inference, if true, was that, even if Wells Fargo had promptly notified Rinaldi or the police of the equivocal signal, the *196 burglary would have been completed by the time the police arrived.
If the conflicting opinions were based on identical evidentiary facts about which there was no dispute and no intruding valuation based on credibility or accuracy, there was no room for a fact-finding function in choosing between the contrary inferences. In such case, it may be said that as a matter of logic one inference was just as likely to be true as the other. In such case there is a 50% probability, and a 50% probability means that no one result is any more likely than the other, as a matter of logical necessity, and therefore as a matter of law. (See, e.g., Carrera v State of New York, 29 AD2d 577, 578.)
Plaintiff has the burden of proving his case by a fair preponderance of the credible evidence. If, at the close of the proofs, the evidence as a matter of logical necessity is equally balanced, plaintiff has failed to meet his burden and the cause of action is not made out (e.g., Ford v McAdoo, 231 NY 155, 160-161; Matter of Erin Wine & Liq. Store v O’Connell, 283 App Div 443, 446, affd 307 NY 768, and cases cited; cf. Roberge v Bonner, 185 NY 265, 269; Richardson, Evidence [10th ed], § 97, p 74).
In the present case, given that receipt even of an uncoded signal, indicating a break in the line, is one which "might indicate illegal entry”, Rinaldi did not meet its burden of proving that the failure to report was the cause of the burglary loss. The crux of the problem was whether the signal preceded or followed the break in. Concerning the sequence of events, the experts could only testify to plausible inferences, the respective probabilities of which were exactly equal on the conceded evidentiary facts, that is, facts as to which there was testimony based upon actual perception. The evidence, based only upon conjecture or speculation, as a matter of law, could not be found to preponderate in favor either of plaintiff’s or defendant’s hypothesized history of the successful burglary (cf. Carrera v State of New York, 29 AD2d 577, 578, supra). Consequently, plaintiff which had the burden of proof had not sustained it. Interestingly, in a case involving remarkably similar facts, it has been said that the question of the burglars’ sequence of operation is impossible of resolution, and, at best, susceptible only of speculation (H. G. Metals v Wells Fargo Alarm Servs., 45 AD2d 490, 493 [Lane, J., dissenting]).
On this score, there must be a reversal and therefore a conclusión that the Appellate Division determination may not *197 stand, however correct it may have been with respect to the limited liability clause in the service agreement, despite the agreement’s reference to "liquidated damages”, analytically a different category with different governing rules (see Ciofalo v Vic Tanney Gyms, 10 NY2d 294, 296-297; H G. Metals v Wells Fargo Alarm Servs., supra, at p 493; Restatement, Contracts, § 339, at p 554, Comment g; §§ 574-575; 6 Williston, Contracts [rev ed], § 1751, at pp 4962-4963; 6A Corbin, Contracts, § 1472, at pp 596-597; 41 NY Jur, Negligence, § 5; 17 CJS, Contracts, § 262; Limiting Liability for Own Negligence, Ann., 175 ALR 8, 12-16; compare Liquidated Damages—Burglar Alarm, Ann., 42 ALR2d 591, 592-593, citing cases interchangeably discussing rules applicable to liquidated damages and limitations of liability).
Accordingly, the order of the Appellate Division should be reversed, with costs to defendant Wells Fargo, and the judgment of Supreme Court dismissing the complaint reinstated.
Judges Jasen, Gabriellx, Jones, Wachtler, Fuchsberg and Cooke concur.
Order reversed, etc.