*435 OPINION OF THE COURT
Leonard B. Austin, J.
The essential building blocks of a long-term marriage are mutual love, trust and respect. When viewing a marriage of nearly half a century, one would expect that the relationship between husband and wife has been nurtured and built with these. All too often, marriages fall apart after several years when some or all of these elements are missing.
The love, trust and respect of this marriage, if they existed at all, were one-sided and died long ago. The parties who are 76 and 69 were married on September 23, 1950. This marriage was characterized by fear, absolute control and violence which was directed at defendant and her three surviving children. Yet, for the reasons which follow, plaintiff, the protagonist of this marriage, is not entitled to a divorce, as a matter of law. This action must be dismissed.
Procedural Background
This action to dissolve a 48 plus year marriage has had a tortured procedural history. An action for a divorce was commenced by Patricia Sullivan, defendant herein, in Bronx County. In that action, Mrs. Sullivan sought a divorce on the ground of cruel and inhuman treatment by John Douglas Sullivan, plaintiff herein. In her complaint, she alleged that her husband had attempted to kill her son and her. The bona fides of such claim is established by Mr. Sullivan’s plea-bargained conviction of reckless endangerment in the first degree (Penal Law § 120.25) and criminal possession of a weapon in the third degree (Penal Law § 265.02) — both class D felonies — before the Honorable Robert L. Cohen, J.S.C., in the Supreme Court, Bronx County, on June 20, 1997.
As part of his plea bargain, Mr. Sullivan was placed on probation. A specific condition of the sentence of probation was that Mrs. Sullivan was granted a permanent order of protection and plaintiff herein was barred from returning to the City of New York. To insure his compliance with such condition, Mr. Sullivan was placed in the electronic monitoring program.
Although not then served, plaintiff herein had already commenced this action. The filing receipts of the Bronx and Suffolk County actions reflect commencement by filing (CPLR 304) respectively on September 30, 1997 and July 31, 1997. Hence, this action was the earlier commenced action and had priority. Although the IAS Justice presiding in Bronx County had a dif *436 fering view of which was the first commenced action, she nevertheless granted plaintiffs motion for a change of venue based upon plaintiffs probation which precluded him from entering the City of New York. The complaint in this action seeks a divorce on the grounds of constructive abandonment (Domestic Relations Law § 170 [2]) and cruel and inhuman treatment (Domestic Relations Law § 170 [1]). By agreement between counsel, the two actions were consolidated for joint trial.*
Defendant’s first attorney did not interpose an answer in the Suffolk County action. Her present attorney waited until the eve of the scheduled trial on marital fault to serve an answer which generally denied the complaint and pleaded a failure to state a cause of action as its sole affirmative defense. He likewise waited until the eve of trial to serve a demand for a bill of particulars. At the trial, several in limine motions were made by the parties.
Plaintiff moved for an inquest on grounds based upon the untimely service of an answer in this action. That application was denied. The purpose of an answer is to put the complaining party on notice of the admissions, denials and defenses interposed in response to the complaint. (CPLR 3013.) While plaintiff is correct that the answer was untimely, no unreasonable surprise could be claimed since defendant had previously served her Bronx action complaint on plaintiff. He knew exactly what her claims and defenses were. Given the view that defaults are to be disfavored in matrimonial actions, and the absence of prejudice, the application was denied. (See, e.g., Schorr v Schorr, 213 AD2d 621 [2d Dept 1995]; Antonovich v Antonovich, 84 AD2d 799 [2d Dept 1981].)
Defendant’s pleading of violence and abuse by the plaintiff against defendant in the Bronx action negates any claim of surprise or prejudice by plaintiff even though the belated answer herein did not interpose such defenses. Accordingly, over objection by plaintiff, cross-examination as to acts of cruelty and violence by plaintiff against defendant was permitted. (Prince, Richardson on Evidence § 6-304 [Farrell 11th ed] [the trial court has the power to control the introduction of evidence].)
Along with the belated answer in this action, defendant also servéd a demand for a bill of particulars. A response to such *437 demand was not even due as of the day of the trial. Accordingly, defendant’s motion to preclude or limit plaintiff’s claim for his failure to respond to the bill of particulars demand was denied and the bill of particulars demand was stricken.
More troubling was the complaint itself. The two theories or grounds for a divorce were alleged in a single cause of action. While inartful pleadings may be overlooked, if a proper cause of action is stated or gleaned from the four corners of the complaint (Rovello v Orofino Realty Co., 40 NY2d 633 [1976]), the court cannot overlook a pleading which does not state a prima facie cause of action. In this case, the sole allegation with regard to the cruelty cause of action averred: “sixth: At the following times, none of which is more than five years before the date of the commencement of this action, the Defendant treated Plaintiff in a cruel and inhuman manner and endangered the Plaintiffs physical and mental well-being, rendering it unsafe and improper for the Plaintiff to continue to reside with the Defendant: Defendant has at other times and locations treated the Plaintiff in a cruel and inhuman fashion such as to render it unsafe and improper for the Plaintiff to cohabit with the Defendant.” There are no other allegations which relate to the cruel and inhuman treatment claim of plaintiff in the complaint. On its face, this allegation, even if properly denominated a separate cause of action, is wholly insufficient to pass muster. Generally speaking, statements in a pleading must “give the court and parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each cause of action or defense.” (CPLR 3013.) In matrimonial actions, CPLR 3016 (c) further requires that such allegations must describe “the nature and circumstances” of the alleged misconduct and “the time and place of each act complained of’. (Emphasis added.)
The allegations set forth in paragraph sixth of the complaint simply do not satisfy the pleading specificity requirements of CPLR 3016 (c). (See, Harari v Harari, 234 AD2d 421 [2d Dept 1996].) The complaint does not give defendant sufficient details of plaintiffs accusations of cruelty so as to permit her to fairly defend against the claim. The deficiency in pleading the cruelty cause of action cannot be overlooked nor salvaged by a bill of particulars. (See, Shoulson v Shoulson, 203 AD2d 974 [4th Dept 1994]; Pustilnik v Pustilnik, 24 AD2d 868 [2d Dept 1965]; Kurcz v Kurcz, 13 AD2d 954 [1st Dept 1961].) Accordingly, defendant’s motion to dismiss plaintiffs claim for a divorce based upon cruel and inhuman treatment was granted.
*438 Prior to the commencement of the trial, defendant moved to discontinue her action against plaintiff pursuant to CPLR 3217 (b). Plaintiff was unable to demonstrate any prejudice associated with the granting of such application since defendant had the option of standing mute and refusing to put on a case. Under such circumstance, and based upon defendant’s representation that she would, in fact, not prosecute her complaint, her application was granted on condition that the former Bronx action of defendant be discontinued with prejudice and without costs.
On the trial of this matter, plaintiffs remaining cause of action for a divorce based upon defendant’s constructive abandonment of him was the only issue to be considered.
THE TRIAL
In support of his remaining cause of action for divorce— constructive abandonment — plaintiff was the sole witness called. In his testimony, plaintiff described how in the spring of 1994 he requested defendant to engage in marital relations. In response to his overtures, he stated that defendant told him, “Go live in a shed”. He believed that notwithstanding her rejection, she was fully capable of engaging in marital relations, as was he.
Plaintiff did, however, acknowledge that defendant had been hospitalized for a heart attack and angioplasty a very short time before his request. He asked again the following week only to be rebuffed due to defendant’s continuing poor health. On cross-examination, defendant’s poor health at the time of plaintiffs spring 1994 requests was confirmed. Plaintiff could not recall the next time, if any, that he requested that defendant engage in marital relations.
Significantly, since spring 1994, plaintiffs health declined due to the onset of Parkinson’s disease. By 1997, the health of the parties and their willingness to engage in marital relations became moot by virtue of plaintiffs plea-bargained banishment from the City of New York. The competing Bronx and Suffolk County actions were commenced shortly thereafter.
Defendant, in her testimony, revealed a litany of violent, abusive conduct on the part of plaintiff within the five-year period prior to the alleged refusal to engage in marital relations in 1994. During the period of 1989 to 1994, defendant suffered a ruptured eardrum, a broken jaw and a broken wrist which required surgery. All of these injuries were inflicted upon defendant by plaintiff. In addition, defendant had a heart attack and angioplasty in 1991 and 1994.
*439 Defendant admitted to refusing to engage in marital relations with plaintiff who made those requests two days after returning home from her heart attack hospitalization in 1994 and the week after that. She testified that her condition did not allow for honoring plaintiffs requests.
Notwithstanding plaintiffs violent tendencies, defendant resumed her wifely duties, engaging in sexual relations with plaintiff twice a week in 1995 and “whenever he wanted to” in 1996 and early 1997. She testified that other than when she was recuperating, she never said no to plaintiffs overtures for sex. The genesis of defendant’s acquiescence and deference seems to be fear for her safety and the safety of her children whom plaintiff threatened to get his way.
Plaintiff, on cross-examination of defendant, attempted to make much of the fact that notwithstanding plaintiffs violence, defendant never sought police or court intervention. She did move out of the marital residence for a short time to escape from plaintiff. Fear of plaintiff was a powerful magnet which kept defendant close and pliable.
Defendant, now 69 years old, is clearly a woman of traditional values. She believes in the adage of “stand by your man” regardless of how abusive he is. In truth, defendant feared rather than revered plaintiff. Her remaining with defendant, without complaint, was more a function of fear than love or loyalty. It is very unlikely that defendant would willingly, or wisely, deny plaintiff what he wanted, including sexual favors, except in the most dire health circumstances. Defendant’s testimony as to the sex life of the parties is far more credible and consistent with the evidence presented.
Under the circumstances, plaintiffs pleaded constructive abandonment commencing in 1994 simply cannot be sustained.
DISCUSSION
There is no statutory defense to a cause of action for constructive abandonment. Unlike an action for a separation (Domestic Relations Law § 200), where the defense of justification is available as an express statement of legislative intent (Domestic Relations Law § 202), there is no like defense available. In promulgating Domestic Relations Law § 170 (2), it was understood that a prima facie case for abandonment included proof that the abandonment was without justification. The 1966 Joint Legislative Committee on Matrimonial and Family Law (1966 NY Legis Doc No. 8, at 96) stated: “On the other hand, as was indicated in our discussion of abandonment * * * *440 it is an integral part of the cause of action to show that there was no justification for the wrongful act alleged as a ground for divorce (i.e., if a wife is forced to leave her husband because of his bad conduct, she had not ‘abandoned him’)” (emphasis added). The party seeking the divorce has the burden of demonstrating marital misconduct. (See, Salomon v Salomon, 102 Misc 2d 427 [Sup Ct, Suffolk County 1979] [generally]; Wolfson v Wolfson, 39 AD2d 724 [2d Dept], appeal dismissed 31 NY2d 671 [1972] [with regard to abandonment].) Entitlement to a divorce for constructive abandonment must be based upon a showing, in part, that the refusal to engage in marital relations is unjustified, willful and continuous. (Diemer v Diemer, 8 NY2d 206 [1960]; see also, Chase v Chase, 208 AD2d 883 [2d Dept 1994]; Lyons v Lyons, 187 AD2d 415 [2d Dept 1992].)
Plaintiffs case is woefully inadequate with regard to demonstrating an absence of justification for refusal to engage in marital relations, even were this court to find that there was such a refusal on defendant’s part. Certainly, rebuffing plaintiffs requests which came on the heels of defendant’s hospitalization for a heart attack was justified. (See, Van Nostrand v Van Nostrand, 35 Misc 2d 434 [Sup Ct, Queens County 1961].) Likewise, rejecting plaintiffs overtures in the face of his violent propensities and assaultive behavior would have been justified as the cruelty of the complaining party justifies what would otherwise be considered an abandonment. (Casale v Casale, 111 AD2d 737 [2d Dept 1985]; Passantino v Passantino, 87 AD2d 973 [4th Dept 1982].)
While it is clear that the marital relationship between these parties is irretrievably broken and lost, that cannot serve as the basis for granting a divorce. (See, e.g., Brady v Brady, 101 AD2d 797 [2d Dept 1984], affd 64 NY2d 339 [1985].) Even in an inquest, the party seeking the divorce must prove that grounds for a divorce exist. (Domestic Relations Law § 211.) Here, plaintiff has not simply met that burden.
Assuming arguendo that defendant was not justified in her refusal to engage in marital relations with plaintiff, a second reason for dismissal of this action is presented. Only two witnesses testified on the trial of this matter: the parties. On the one hand, plaintiff testified that he requested and was rebuffed. On the other, defendant testified to an active sexual relationship up until March 1997 when plaintiff was arrested. On balance, these competing versions of the relationship of the parties, in and of itself, is a wash. Put another way, plaintiff has not established by a fair preponderance of the credible evi *441 dence that there was a constructive abandonment here. Where there is an even balance of evidence, the court is required to find for defendant. (See, Rinaldi & Sons v Wells Fargo Alarm Serv., 39 NY2d 191 [1976].)
Finally, plaintiffs complaint must fail in the absence of testimony on his part that after defendant refused his advances after her heart attack in spring 1994 that he ever again requested or sought marital relations. Plaintiff was content to rely on defendant’s statement to “[g]o live in a shed” as a basis for avoiding the topic ever again. Such statement alone does not give rise to constructive abandonment. (See, Rossiter v Rossiter, 92 Misc 2d 342 [Sup Ct, Kings County 1977] [wife’s demand that the husband get out of the marital residence did not constitute a refusal to engage in marital relations].) Plaintiffs failure to further seek marital relations bars his prevailing in this action. (See, Schildkraut v Schildkraut, 223 AD2d 585 [2d Dept 1996].)
For the foregoing reasons, the complaint herein must be dismissed.
Dismissal of the matrimonial action does not, however, abate or obviate enforcement of plaintiffs previously ordered support obligation or determination of support for defendant in futuro. (See, Garver v Garver, 253 AD2d 512 [2d Dept 1998]; King v King, 230 AD2d 775 [2d Dept 1996]; Schildkraut v Schildkraut, supra; Blisko v Blisko, 149 AD2d 127 [2d Dept 1989].) Accordingly, the matter is set down for a hearing on arrears, maintenance and counsel fees (Domestic Relations Law § 237) on June 4, 1999. The parties shall file their prehearing submissions with chambers on or before May 26, 1999. No issue with regard to exclusive occupancy of the martial residence in the Bronx is presented given plaintiffs enforced absence therefrom.
The judgment to be settled herein on June 4, 1999 shall include a provision for a money judgment for arrears, a provision for maintenance and a provision for an award of counsel fees with the amount to be awarded as to each left blank.

 This matter bears the index number assigned to the Bronx action transferred here. Since the parties have utilized this index number on their various submissions to this court, it shall remain the primary index number.