## Madison EDJ LLC v Clerveaux

2024 NY Slip Op 30524(U)

February 21, 2024

Civil Court of the City of New York, Kings County

Docket Number: Index No. 318810/22

Judge: Sergio Jimenez

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS: HOUSING PART O
------------------------------------------------------------------------X
MADISON EDJ LLC,

                                Petitioners,

-against-

MEGAN CLERVEAUX,

                                Respondents.
------------------------------------------------------------------------X

Index No. 318810/22

DECISION AND ORDER

Present:

Hon. Sergio Jimenez
Judge, Housing Court

      This nonpayment proceeding seeks recovery of the property at 452 Madison Street, Apartment 3B, in Brooklyn, New York 11221 for an alleged failure to pay rent. This proceeding was transferred from the resolution part to the trial part in May of 2023. After an in-person pre-trial conference, the court adjourned the proceeding for trial. The court conducted a trial on October 17, 2023, November 13, 2023 and November 16, 2023. The proceeding was adjourned for the filing of post-trial memoranda and, once submitted, the court reserved decision.

Claims

      The parties stipulated to petitioner's prima facie case (Petitioner's A – G including the deed, MDR registration waiver, DHCR registration, current renewal lease, initial lease and rider, rent ledger and ERAP notice). As such, petitioner is deemed the owner, that the parties have an express written agreement to pay rent for the premises and that petitioner has a valid claim to the amount sought. Petitioner believes that they are due $18,771.77 as all rent due through December 2023. Respondent alleges a variety of defenses including: inappropriate predicate notice, inappropriate petition, partial payment of rent, Tenant Safe Harbor Act, breach of warranty of

[* 1]

habitability, repair and deduct, MDL §302-a defense claiming that there were a variety of rent-impairing violations that precluded the payment of rent for the time period where the condition existed, and constructive eviction. Respondent also interposed four counterclaims, namely: breach of warranty of habitability, seeking that the court issue an order to correct, harassment and attorneys' fees. Respondent argues that The Department of Housing Preservation and Development issued violations (which are all rent-impairing violations)[1] throughout 2019-2022 that were not corrected for at least six months. As such, respondent avers that petitioner should not be entitled to rent during the period of the petition. The court also took notice of all publicly available DHPD records[2] as well as prior index numbers between the parties 82567/16 and 50474/19.

The Hearing

As petitioner's prima facie case was consented to the court proceeded, after opening statements, directly to respondent's defenses. Respondent called as witnesses respondent's mother, Georgia Davis, respondent's cousin Leroy Cummings and Respondent herself. The court accepted into evidence R1-11 (excluding R9) which were a series of pictures, texts messages, travel records and a repair list. The respondent and her witnesses all testified as to the perceived conditions of the premises as well as various access dates and their results.

Petitioner, in rebuttal, called Ronald Ayala, the building superintendent, Angel Hall, maintenance manager for petitioner's management company, and Osagie Idhodaro, the property manager. Petitioner introduced P H-R (work orders, photographs and a log of repairs). The petitioner's witnesses testified as to both actual work being done on the building and in

---

[1] HMC §25-191 sets forth the list of rent impairing violations, here relevant violations were promulgated under orders 507 and 595. As no evidence was presented regarding the eyehook violation, the court will not consider it.

[2] The court is explicitly instructed to take judicial notice of the DHPD violation reports as per Multiple Dwelling Law §328(3).

[* 2]

respondent's apartment as well as efforts at work being done but being allegedly frustrated by respondent.

Discussion

After considering the testimony presented by the parties, the documentary evidence presented and the pleadings of both parties, the court finds that the petitioner has met their burden of proof subject to respondent's defenses.

The first defense the court must analyze is the MDL §302-a defense. Commonly referred to as the defense of rent impairing violations, this defense is a bar on the owner collecting rent when there have been violations issued for conditions enumerated by the Department of Housing Preservation and Development in existence for more than six months (NY Mult Dwell §302-a; HMC §25-191). At the time the defense is raised, the party seeking to assert the defense must plead and prove the material facts to the defense and deposit with the clerk the amount sought recovered in the action (*Id.*).

An owner's potential responses to such a defense are limited and are: (i) if the condition did not, in fact, exist; (ii) the condition was, in fact, corrected; (iii) the violation was caused by the resident or someone within the resident's control; or (iv) the resident failed to provide access for the purpose of correcting the violation (*Id.*).

Here, the issue of the deposit is not in question, neither in time nor in amount as the parties consented to the amount being deposited.

Given the extent that the testimony was equal in its credibility and did not necessarily preponderate over the other, it is the party who bears the burden who will have their application denied (*Rinaldi & Sons, Inc. v. Wells Fargo Alarm Service, Inc.*, 39 NY2d 191 [1976]). Here, the respondent has the burden of proof to prove their defense of the presence of a rent impairing

3

violation. It is without question that there are a variety of conditions that meet the rubric of rent impairing violations set forth by the Housing Maintenance Code §25-191. The gravamen of this proceeding is the alleged leaks throughout the apartment and in the public area. The court finds that these conditions existed and have remained for more than the six (6) month period as DHPD violations. As such, the court must turn its attention to the other responses presented by the petitioner to these rent impairing violations. The court finds that these responses were not met. The leaking conditions existed, were uncorrected, were not caused by the resident, and access was granted. As such petitioner has not defeated the MDL §302-a defense. The problem with a leak, and in particularly a reoccurring leak, is that the source must be addressed and, here, the continual nature of the leaks in the same place show that the work was not appropriately done. The issue of access, while relevant in analyzing a situation as this was clearly not an issue for either party, as shown by the numerous work orders entered into evidence. Even taking into account the various testimony of the parties, even if malicious, one missed access date for the removal of DHPD violations does not trigger a defense to MDL §302-a rent impairing violation.

The court finds that there was from at least September 2022 through January 2024 (the relevant time frame) the continued presence of rent-impairing violations. As per the DHPD records there were violations of Order No. 507 in place between September 2022 and January 2024[3] for the substantially same condition – leaks on the third floor/roof.[4]

The court also finds that there were rodents, peeling and broken paint and plaster, in addition to the leaks during the time sought in the petition. For the purposes of the court awarding an abatement/counterclaim for breaches of the warranty of habitability, a determination of "the

---

[3] The court took judicial notice of DHPD violations report.
[4] The court does not consider violations of any other rent-impairing violations as they were not proven through either testimony or through their existence.

[* 4]

severity of the violation and duration of the conditions giving rise to the breach as well as the effectiveness of steps taken by the landlord to abate those conditions" is critical (*EB Management Properties, LLC v. Maruf*, 71 Misc3d 129[A][App Term 2d Dept, 2nd 11th & 13th Jud Dists, 2021]; *Park W. Mgt. Corp.*, 47 NY2d at 329; see *Matter of Nostrand Gardens Co-Op v. Howard*, 221 AD2d 637, 638 [2d Dept 1995]; *Dumbadze v. Saxton Hall Owner, LLC*, 93 AD3d 756 [2d Dept 2012]). As the MDL §302-a defense has functionally dealt with the abatement of the rental liability during that time, the court will not consider further abatements on these issues.[5] As any payments made voluntarily may not be recouped in this type of action, the court declines to award an offset to anything paid prior (see MDL §302-a(3)(d); *Alphabet Soup Associates, LLC v. Ken Wu*, 66 Misc3d 1209[A][Civ Ct New York County, 2020]). Any damage claims, subject to petitioner's defenses, are severed for plenary action, including attorney's fees.

With regard to the notice issue, in situations where knowledge of something is acquired by an agent acting within the scope of his or her agency, it is imputed to the principal even if the information is never actually communicated (*Christopher S. v. Douglaston Club*, 275 AD2d 768 [2d Dept 2000]). The court finds that respondent, through communications with the petitioner through their various agents, gave notice to the owner as to the conditions set forth.

While interesting, the court finds unavailing petitioner's argument that the current violations were not ripe at the time of the assertion of the claims. In the same way that petitioners seek to amend the petition to date, the court will assign a similar amendment to conditions and their consequences to date.

Petitioner's defense that the work was done does not rise to the level of contradicting the MDL §302-a defense. While the court finds some work was done, the continued existence of the

---

[5] In this context, any further reduction would cause a windfall to the respondent as without the MDL §302-a defense, the leaks in this particular proceeding would not constitute a 100% abatement.

conditions, not the continued presence of the DHPD violation, triggers this bar to collection of rent.

The court finds that any expenditure of repairs made by the respondent were not proven, nor were done with permission of the petitioner and, as such, do not qualify as a deductible cost.

As to the rest of the respondent's affirmative defenses and counterclaims, the court dismisses the first, second, third (mis-labelled as first), fourth (mis-labelled as second), sixth (mis-labelled as fourth), eight (mis-labelled as sixth) defenses and the second counterclaim as unproven at trial.

Conclusion

For the above reasons, as respondent has made out their MDL §302-a defense, petitioner is barred from collecting rent from September 2022 through January 2024, without prejudice to either party's claims to February 2024 and forward. The respondent is entitled a judgment of dismissal as to the petition. The respondent may make an ex parte request to release the funds as desired.

The court further orders that petitioner to correct any HPD violations currently in place as follows: all "C" violations must be repaired on the within seven (7) days of first access dates, "B" violations on or before within 30 days of the first access date and "A" violations on or before 90 days from first access. Access dates to be arranged by the parties, and it is further ordered that on default of this order to correct violations, respondent may move for appropriate relief. Appropriate relief is defined in this section as including restoring to the calendar for a finding of contempt, civil penalties (upon a joining of DHPD, which may be requested by either party or may be done *sua sponte* by the court pursuant to CCA §110[d]) or compliance. Once this work has been done, the court authorizes petitioner to seek a dismissal inspection with DHPD. The parties may pick up

6

their exhibits in Part O, but if the parties fail to do so within thirty (30) days from the date of this order, the exhibits will be discarded according to court directives. This constitutes the decision and order of the court.

Dated: February 21, 2024
      Brooklyn, New York

                                Sergio Jimenez
                                Judge, Housing Court
_____
                        Sergio Jimenez, JHC

To:    Hertz, Cherson & Rosenthal, PC
           Attn: Seth Denenberg, Esq.
       118-35 Queens Boulevard
          9th Floor
       Forest Hills, New York 11375
       thefirm@hrhcrlaw.com
       *Attorneys for Petitioner – Madison EDJ LLC*

       Brooklyn Legal Services
           Attn: Nicholas Jian Yung Loh, Esq.
       105 Court Street
          4th Floor
       Brooklyn, New York 11201
       nloh@lsnyc.org
       *Attorney for Respondent – Megan Clerveaux*

7

[* 7]