| |
|---|
| **Elwin v Burnett** |
| 2024 NY Slip Op 34060(U) |
| November 15, 2024 |
| Civil Court of the City of New York, Queens County |
| Docket Number: Index No. L&T 2693/24 |
| Judge: Sergio Jimenez |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF QUEENS: HOUSING PART O
-----------------------------------------------------------------X
ALISA ELWIN,

                        Petitioner,

           -against-

MIGUEL BURNETT,

                  Respondents.
-----------------------------------------------------------------X

Index No. L&T 2693/24

**DECISION/ORDER**

Present:

      Hon. Sergio Jimenez
          Judge, Housing Court

The decision and order on petition after trial is as follows:

PROCEDURAL HISTORY

      Alisa Elwin (petitioner), now represented by counsel, commenced this illegal lock-out proceeding under RPAPL Section 713(10) alleging that she took legal possession of the premises by entering into a lease with the owner at the time, Michael McMayo, in 2011, continuously lived there since that time and has now been locked out. Petitioner alleges that she was locked out of the subject premises located at 1887 Strauss Street in Brooklyn, New York 11212. It is undisputed that Mr. Burnett, who appears by counsel, is the son of Mr. McMayo and exercises dominion and control over the premises.

      Service was not challenged and therefore the court will consider the service proper. The court held a hearing to determine the facts underlying this petition.

1

[* 1]

## TESTIMONY AND EVIDENCE

Petitioner testified on her own behalf. Ms. Elwin testified that she moved into the apartment in 2011 with her husband, Kevin. She credibly stated she has never returned the keys to the respondent. Ms. Elwin admitted that she spent a significant time in Las Vegas, Nevada due to family issues. Namely she testified that her son, who lived in Nevada, broke up with his children's mother and that he needed help taking care of her grandchildren beginning in the second half of 2022. This was further exacerbated by his alleged incarceration which led to Ms. Elwin remaining in Las Vegas for months at a time, only returning for a couple of months to celebrate holidays. It is also undisputed that the petitioner and her husband have since separated. Ms. Elwin alleged that she had a bedroom set, lamps, Japanese dolls, college degrees, cookware and silverware, tvs and other assorted personal items in the premises when she left. On cross-examination, Ms. Elwin admitted that the original 2011 lease was for $1,800 and that it had no term attached. Ms. Elwin stated she had not spoken to her daughter for months and that she was "unable" to answer when the last time she spoke to her ex-husband. On re-direct she introduced into evidence Pb1-6 (pictures) and P-c (video) outlining her connections with the apartment. Ms. Elwin also spoke as to how Kevin Elwin would pay the rent from their joint pot of money through Zelle and she would cover other utilities. The court, at petitioner's request also took judicial notice of a holdover 306739-24 against the petitioner brought by the respondent in this court that is currently pending. Petitioner then rested.

Respondent testified on his own behalf. He credibly testified that his father passed away last September and that he has been acting as an owner since that time. He introduced Ra (2021 lease), Rb (surrender agreement with Kevin Elwin and Michelle Elwin), Rf (docusign receipt), and Rg (death certificate for Mike McMayo). The lease showed only Kevin Elwin as an occupant. However, it was

2

not explained by the respondent why Ms. Elwin was not made a party to the lease. The majority of respondent's testimony dealt with the surrender agreement and its effect including that $8,000 was paid to Kevin and Michelle Elwin to give up their claims to the apartment. Mr. Burnett spoke briefly about how he assumed Ms. Elwin represented both of her parents as a result of his "only point of contact," and Kevin Elwin telling him that his daughter would speak for him. However, Mr. Burnett admitted he had never spoken to Ms. Alisa Elwin about whether her daughter would represent her interest as well. Mr. Burnett also stated that he does not often visit the premises. After respondent rested, petitioner did not provide any rebuttal.

DISCUSSION

The parties all agree on certain facts: for the purposes of this proceeding, the respondent is the acting owner who maintains dominion and control over the premises. Ms. Elwin lived in the premises full-time for years. The locks have also been unquestionably changed by the respondent. This proves another element of an illegal lockout proceeding (*Romanello v. Hirschfeld*, 63 NY2d 613[1984]). The main point of contention where the parties differ is whether the surrender agreement (Rb) constitutes a surrender for Ms. Elwin and whether Ms. Elwin abandoned the apartment.

Respondent has alleged a defense that petitioner had abandoned the subject premises and/or that she was not in possession at the time of the alleged lockout. The burden of proving a such a waiver rests upon the party seeking to establish it or relying upon such surrender (*Sam & Mary Housing Corp. v. Jo/Sal Market Corp.*, 100 AD2d 901, 901-902 2nd Dept. 1984], *affirmed*, 64 NY2d 1107, 1108 [1985]). A party alleging an abandonment has the burden of proof to show that the non-alleging party abandoned the subject premises. Here, respondent must prove petitioner's intent to

3

[* 3]

abandon the subject premises and an overt act (*Delgado v. 1038 Southern Blvd. Realty Assocs.*, N.Y.L.J. May 28, 2008 at 27:1 [Civ. Ct. Bronx Co.]; *Gardner v. Smith*, N.Y.L.J. Dec. 21, 2005 at 22:3 [Civ. Ct. Kings Co.]; *Walker v. 570 7th Ave. LLC*, N.Y.L.J. June 8, 2005 at 22:1 [Civ. Ct. Kings Co.]; *N'tuli v. Rinaldi*, N.Y.L.J. Jan. 31, 2001 at 32:2 [Civ. Ct. Richmond Co.]).

Here, the court finds petitioner returned to the premises, had kept her belongings in a separate area organized, not as storage, but as a living space. Further, the interruption of actual presence in the apartment may be excused. For purposes of primary residence both incarceration, college and stays in nursing homes do not interrupt such occupancy (*Hughes v. Lenox Hill Hosp.*, 226 AD2d 4 [1st Dept 1996]; *315 East 72nd St. Owners, Inc. v. Siegel*, 22 Misc3d 10 [App Term 1st Dept 2008]). It would run counter to public policy to punish a socially desired act of taking care of one's family when the trauma surrounding foster placement has been so clearly documented and acknowledged[1]. This would especially be the case when, as set forth above, there are other instances of absences which can be excused without giving up residential rights.

Respondent's second argument is that the surrender agreement could be applied to the petitioner. Here, it is undisputed that there is no actual authority as no authorization was presented by either party allowing Ms. Michelle Elwin to act as a representative of Ms. Alisa Elwin. As Mr. Kevin Elwin and Ms. Alisa Elwin are divorced that would also divest Mr. Elwin of any authority to act on

---

[1] For an illuminating read on the realities and effects of the family policing system the court suggests reading Professor Trivedi's law review article published in the New York University Review of Law & Social Change. In the article, Professor Trivedi, among a more all-encompassing analysis of the system, recounts the various harms that can occur even when children are placed in well-meaning loving foster placements (Shanta Trivedi, *The Harm of Child Removal*, 43 NYU Rev of L & Soc Change 523 [2019]).

4

[* 4]

Ms. Elwin's behalf[2]. In this particular situation, there is also no apparent authority as the respondent admits he had not spoken to Ms. Elwin about anyone representing her interests at any point during the occupancy.

Where the testimony on both accounts is equally as credible but conflicting and the weight of either one does not preponderate over the other, it is the party with the burden of proof who will be denied relief (*Rinaldi & Sons, Inc v. Wells Fargo Alarm System, Inc.*, 39 NY2d 191 [1976]), in this situation, it is the respondent who must prove abandonment. The court finds that respondent has not made out his burden to show that either the surrender agreement attached to the petitioner or that petitioner's absence was an unexcused one. As such, under this set of facts, the respondent has not made out their defense of abandonment. The court notes, however, that under similar facts, the court could find abandonment due to the prolonged absence of the petitioner, excused as it may be.

Further, the court finds unavailing respondent's argument as to futility. The court is quite dubious of the concept of futility, particularly because it rewards bad actors (*see Bernstein v. Rozenbaum*, 20 Misc 3d 138[A], 2008 NY Slip Op 51558[U] [App Term, 2d & 11th Jud Dists 2008]; *Soukouna v. 365 Canal Corp.*, 11 Misc 3d 137[A], 2006 NY Slip Op 50522[U] [App Term, 1st Dept 2006]; *Bornstein v. Goldberger*, 59 Misc 3d 135[A], 2018 NY Slip Op 50513[U] [App Term, 1st Dept 2018]; *Wagman v. Smith*, 161 AD2d 704 [2d Dept 1990]; *110-45 Queens Blvd. Garage, Inc. v.*

---

[2] The court's analysis would not differ even if Mr. and Ms. Elwin were still married or even not separated as husband and wife are not one within the scope of legal entities and have their own desires, interests and volition. It has been an unfortunate truth that misogyny has run rampant over that tenet throughout recorded history. As it would be a violation of the Equal Protection Clause of the 14th Amendment to not allow a woman to make her own financial decisions, the court cannot here condone the abrogation of Ms. Elwin's independent rights (ability to assign an agent or not to do so/surrender a premises) to be given to her husband without express permission (*Reed v. Reed*, 92 S.Ct. 251 [1971]).

[* 5]

*Park Briar Owners, Inc.*, 265 AD2d 415 [2d Dept 1999]). It is a concept better left for the commercial sphere.

CONCLUSION

For the reasons set forth above, the petition is granted. A judgment of possession is granted in favor of petitioner. Warrant to issue forthwith. Stay of execution to November 20, 2024 for respondent to give Petitioner a copy of the keys to the front entrance door of the apartment forthwith upon service of a copy of this Decision/Order. If Respondent fails to comply, Petitioner is permitted to change the lock to the subject premises and shall provide Respondent with a copy of the keys to the newly installed lock, if able to do so peaceably. Earliest eviction date set at November 21, 2024. Petitioner may also employ a marshal to retake possession of the premises and enforce this judgment. Petitioner may seek the assistance of the NYC Police Department to regain entry after requesting the assistance and presence of the police to enforce the peace. This order/judgment is not enforceable against anyone but respondent. Should new tenants be in place -prior to the date of this order, petitioner may not execute the warrant.

A copy of this decision/order will be published on NYSCEF and mailed or emailed to non-represented parties. Exhibits that were physically submitted to the court will be available for pick up for the next 30 days or will be destroyed in compliance with the various court directive. This constitutes the decision and order of the court.

Dated:     Brooklyn, New York
           November 15, 2024                    _____
                                                Hon. Sergio Jimenez
                                                J.H.C.

Sergio Jimenez
Judge, Housing Court

[* 6]

To:    The Legal Aid Society
           Attn: Anna Wettstein, Esq.
      111 Livingston Street
          7th Floor
      Brooklyn, New York 11201
      awettstein@legal-aid.org
      *Attorneys for Petitioner – Alisa Elwin*


      Guerriera, Feldman & Williams, LLP
           Attn: Ari Feldman, Esq.
      363 Sixth Avenue
      Brooklyn, New York 11225
      gfwlawyers@gmail.com
      *Attorneys for Respondents – Miguel Burnett*

7

[* 7]